ARTHUR J. JANTAUSCH, AND ANN M. JANTAUSCH, PLAIN-TIFFS-RESPONDENTS, v. BOROUGH OF VERONA, A MUNICIPAL CORPORATION OF NEW JERSEY AND VERONA BOARD OF ADJUSTMENT, NEW JERSEY, DE-FENDANTS-APPELLANTS.

Argued April 1, 1957—Decided May 20, 1957.

Mr. *Fred G. Stickel, III,* argued the cause for the appellants (Mr. *William J. Camarata,* attorney).

Mr. *John W. Lebeda* argued the cause for the respondents.

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment entered in the Superior Court, Law Division, certified here on our own motion, in an action in lieu of prerogative writ which reversed a finding and determination of the Board of Adjustment of the Borough of Verona to revoke a building permit which had been issued to the plaintiffs-respondents.

The respondents are owners of premises located in a "B" Residential Zone which is restricted to one-family houses by the zoning ordinance. The premises are a split-level home consisting of a two-car garage on grade level with three bedrooms and two baths overhead; the other section of the house containing the usual living room, dining room, kitchen, with a cellar underneath.

The zoning ordinance adopted in 1939 sets up four one-family residential districts varying slightly in their restric-

tions. On the question · here presented the following provisions apply:

"Section 6. One Family Residence Districts:
6.1 General Provisions—Use
Within any one-family residence district no buildings shall be erected or altered or used in whole or in part for any other than the following specified purposes:
6.11 Single detached house used as a residence by not more than one family. ·
6.12 A residence containing the professional office of its resident owner or lessee.
6.13 *Home occupation incidental to the use as a residence, provided that such occupations shall be conducted solely by resident occupants of the building, and that no display of products shall be visible from the street.*
.6.15 Buildings used for private horticultural or agricultural purposes, private garages or stables, and private dog kennels." (Italics supplied)

Section 5.81 authorizes a sign for "home occupation" and section 8.1 permits section 6 uses in the business district as well as expressly permitting beauty parlors.

On October 11, 1955 the respondents applied to the building inspector for a permit to alter their two-car garage so as to make one side suitable for use as a beauty parlor. The permit to so convert the garage was issued on the day the application was made and the respondents promptly proceeded to renovate, with the result the work was 90% completed on November 3, 1955. For such work they had expended about $3,000, and on November 3, 1955 various neighbors living within 200 feet of the respondents' residence filed an appeal with the board of adjustment on the ground that under the zoning ordinance the building permit had been erroneously issued and should be cancelled.

The board after a hearing decided that while everybody had acted in good faith the building permit should be revoked because the building inspector had misconstrued the ordinance and had acted in excess of his jurisdiction in granting a permit. They expressly found and concluded that "We cannot perceive that the operation of this beauty shop would be a home occupation incidental to the use of

the residence," and further, that such operation "is a detriment to the public good and substantially impairs the intent and purpose of the zone plan and zoning ordinance." They directed a revocation of the building permit.

The plaintiffs-respondents immediately instituted this action in lieu of prerogative writ to review the revocation of the building permit. The matter was heard below by Mr. Justice Weintraub, then sitting as a trial judge in the Superior Court, Law Division, and he concluded that the revocation of the building permit by the board of adjustment should be reversed and an order was entered to that effect.

■■ We agree with his finding that the adjacent property owners were not estopped or guilty of laches when they appealed to the board of adjustment to revoke the permit as illegally issued. The question raised on that appeal was whether the building inspector had acted in excess of the power conferred on him and in violation of the zoning ordinance and, as the trial court said, this is a legal and not an administrative question which had to be determined by an interpretation of the ordinance as applied to the facts and circumstances under which the building permit was issued. He concluded that the contemplated use of the premises as a beauty parlor was "incidental to the use as a residence." He said:

"A use is thus incidental so long as the main use of the dwelling remains residential and the occupational activity is factually subordinate. *Bassett, Zoning* (1940), *p.* 101. The circumstance that the relatively small area here to be used for beauty culture was initially part of the garage rather than of some other portion of the structure is of no consequence. The dwelling would remain predominantly a dwelling."

He then pointed out there were a number of techniques by which the borough in the ordinance could have limited such "home occupations." *Cf. Information Report No. 54, American Society of Planning Officials.* But he held that such action was wholly legislative and he could not add

restraints to the ordinance without exercising a legislative power which he did not have. 41 *N. J. Super.* 89 (*Law Div.* 1956).

The appellants argue that the trial court's interpretation of "home occupation" is contrary to the intent of the ordinance. They assert that the establishment of a beauty parlor in a high-class residential area, even though such was conducted within the four walls of a residence and by an occupant of the residence, could hardly be considered a "home occupation incidental to the use as a residence" unless, because of the peculiar circumstances of the community, such was customary and accepted practice, was not a business, and was not harmful to the residential character of the neighborhood. They insist that the testimony before the board of adjustment and the applications and plans themselves indicate quite clearly that the operation of a beauty parlor in an area completely cut off from the rest of the residential structure with alterations and equipment necessary to such operation could not be considered a "home occupation" in the Borough of Verona when viewed in light of the historical reasons for permitting such uses. They assert that the proposed use of the premises is hardly a customary one as the word "customary" is used historically. Since the word "customary" does not appear anywhere in the ordinance and particularly as a modifier of the term "home occupations" it is obvious that such an argument is an attempt to insert the word "customary" into section 6.13 of the ordinance by implication and thereby add an additional restraint or limitation to the phrase "home occupations," as the trial court pointed out.

There is very little historical information in the record and certainly none to establish the proposition that Essex suburban residential neighborhoods are devoid of "home occupations." Those cases which construe ordinances enacted in municipalities where there was a well-established custom to carry on certain occupations on a piece-work basis at home, which occupations are ancillary to the principal industries located in that particular municipality, are not

particularly helpful in interpreting this ordinance, nor are the cases interpreting ordinances which specifically exclude or include beauty parlors or salons in residential or business districts.

In this particular Borough of Verona apparently there were and are about ten beauty parlors or salons, four of which are admittedly located in residential areas, but the appellants insist, in their brief, that three were definitely non-conforming uses and the fourth seems to have been suffered to exist without any building permit at all. Thus we have to construe this particular ordinance with its general language as it is written and apply it to the facts.

It is conceded that the proposed use is "by resident occupants of the building," that no display of products visible from the street is contemplated, and it is equally conceded that the principal use of the two-level split dwelling is as a residence for the plaintiffs-respondents Arthur J. Jantausch and Ann M. Jantausch, his wife, who contemplates operating the beauty salon in the remodeled garage.

Appellants argue that such use is hardly "incidental to the use as a residence," for here we have an operation which is and must be completely separated and divorced from any residential use of the premises. The distinction they seem to make is that it could be incidental to the residential use if it were conducted within the main house or basement thereof, but because it is contemplated to be conducted and operated in a reconstructed part of a two-car garage, it is no longer incidental to the residential use of the premises. It is a fact of common knowledge that in this modern age a good part of attached or detached garages appurtenant to residential properties are used for household purposes other than the storage of the automobile and its equipment and accessories. Many activities are carried on there that heretofore were carried on in the cellar or the house. Thus it is obvious that a use incidental to the use of the premises as a residence might as a matter of law be effectively carried on in the garage as well as in the main part of the house.

The appellants further argue the operation of a beauty parlor as herein contemplated is in every sense of the word a "business," and to interpret this ordinance to mean the permitting of a use of residential property in an exclusively zoned residential area for such business purposes would in effect destroy and depreciate residential values of the surrounding property, contrary to the intent and purpose of the zoning plan. The answer to that is that this ordinance may permit just such a thing to happen if the operation of the beauty parlor here contemplated is a "home occupation" as defined and limited by this ordinance.

In attempting to demonstrate that the operation is a business the appellants refer to the provisions of *R. S.* 45:4A–1 *et seq.,* and argue that this statute (the Beauty Culture Act) demonstrates that the operation of a beauty parlor is a business fraught with public interest to such an extent as to require strict state regulation. But as the trial court pointed out, *R. S.* 45:4A–1, 2 and 4 refer to the practice of beauty culture as an "occupation." A reading of this statute makes it clear that it was enacted for the purpose of controlling the practice of beauty culture so that shops would be maintained in a clean and sanitary condition so as to provide proper and sufficient service for their patrons; and this is made particularly clear by the Board of Beauty Culture's Rules 1 to 12 and is expressly set forth in *R. S.* 45:4A–16 upon which the appellants particularly rely. This section provides:

"The department shall prescribe such sanitary rules and regulations as it may deem necessary with particular reference to the precautions necessary *to be employed to prevent the creation and spread of infections and contagious diseases.* No owner or manager of any beauty shop or school of beauty culture shall permit any person to sleep in or use for residential purposes any room used wholly or in part as a beauty shop or school of beauty culture." (Italics supplied)

Prohibition against use of the premises for residential purposes is aimed at adequately protecting the sanitary conditions and cleanliness of the shop and has nothing

whatsoever to do apparently with its location in a part of a residential property where the beauty shop is operated separate and distinct from the residential part of the premises. In fact, as the trial court pointed out, the statute and rules recognize a practice of conducting beauty shops in private residences, and in fact the respondents hold the requisite approval. This statute is enacted for a purpose separate and distinct from the purpose sought to be achieved under the zoning ordinance. Yet, on the other hand, it cannot be said that the enactment of this legislation was for the purpose of removing the regulation of the location of beauty parlors and salons from the zoning powers of the municipality. *Cf. Town of Bloomfield v. New Jersey Highway Authority,* 18 *N. J.* 237 (1955).

The ordinance in limiting the "home occupations" to "such occupations as shall be conducted solely by resident occupants" and requiring "no display of products shall be visible from the street" indicates an intention to permit only such light occupations in the home that could not change the character of the building from a home to a business or industrial establishment. *Cf. Lemp v. Millburn Township,* 129 *N. J. L.* 221 (*Sup. Ct.* 1942); *State v. Mair,* 39 *N. J. Super.* 18 (*App. Div.* 1956). The primary use of the premises by the occupant must be residential and the "home occupation" engaged in must be clearly incidental thereto. Thus, the "home occupation" must be such, even though it be a gainful pursuit, as can and must be carried on in a manner consistent with the use of the premises as a residence within the intent of the provisions of this particular ordinance.

Whether certain occupations *per se* are such that they cannot be engaged in on the premises without affecting the use of the premises as a residence is a legislative problem, as Mr. Justice Weintraub pointed out below. Hence, we shall not make such distinction between either dressmaking or millinery or home cooking and beauty culture, but must leave that problem to the judgment of the local municipal

legislative body based on its knowledge of conditions peculiar to a particular locality.

The other points argued by the appellants are not relevant to the disposition of the question presented here and were effectively answered by Mr. Justice Weintraub below.

We are satisfied that under the proofs here submitted the permit was properly issued to "resident occupants of the building" for a use that "is incidental to the use as a residence," and that a proper exercise of the incidental use—that of the home occupation of beauty culture—will not affect the character of the use as a residence contrary to the spirit or intent of this ordinance.

The judgment is affirmed.

JACOBS, J. (dissenting). Recognizing zoning ordinances as vital instruments in the preservation of the desirable characteristics of our local communities, our courts have generally displayed readiness in upholding them and in construing them liberally in furtherance of their proper objectives. *Fischer v. Township of Bedminster,* 11 *N. J.* 194 (1952); *Lionshead Lake, Inc., v. Township of Wayne,* 10 *N. J.* 165 (1952), appeal dismissed 344 *U. S.* 919, 73 *S. Ct.* 386, 97 *L. Ed.* 708 (1953). And they have displayed awareness of the need for giving due weight to the considered judgment of the municipal authorities. See *Ward v. Scott,* 16 *N. J.* 16 (1954). While Verona's governing body was not called upon to deal directly with the instant matter, its board of adjustment did find that the proposed establishment of the beauty salon in the residential zone would be "a detriment to the public good" and would substantially impair the "intent and purpose of the zone plan and zoning ordinance." It took the position that operation of the salon in the converted garage attached to the plaintiffs' residence would not constitute a permissible "home occupation incidental to the use of the residence" within section 6 of the zoning ordinance.

The plaintiffs' beauty salon business will admittedly be governed by the provisions of *R. S.* 45:4A–1 *et seq.* and

the regulations which have been issued thereunder. Those regulations require that the business be duly licensed; that it maintain at its main entrance or window a sign or other marking "which shall be clearly visible to the general public" indicating that beauty culture is being practiced on the premises; that its entrance "permit patrons to enter the shop directly from the public thorofare without passing through any portion of the home"; that no portion of the licensed premises "be used for domestic or residential purposes"; that the shop "possess adequate equipment and maintain same in a cleanly and sanitary condition so as to provide proper and sufficient service" for its patrons; and that the premises "be subject to inspection" by the Board of Beauty Culture of the State Department of Health "or its representative." The regulations also embody many requirements relating to sanitary facilities and practices; they are wholly appropriate to the conduct of a business enterprise which may affect the public health and well-being.

In *Bonasi v. Board of Adjustment of Haverford Tp.*, 382 *Pa.* 307, 115 *A.* 2d 225 (*Sup.* 1955), the court held that the operation of a beauty shop in the basement of a residence was not permissible under an ordinance which authorized accessory professional uses. In *State ex rel. Kaegel v. Holekamp,* 151 *S. W.* 2d 685 (*Mo. App.* 1941), the operation of a dance studio in a converted portion of a residence was held not to come within an ordinance provision permitting home occupations; and a similar holding with respect to a photographer's studio may be found in *State ex rel. A. Hynek & Sons Co. v. Board of Appeals of City of Racine,* 267 *Wis.* 309, 64 *N. W.* 2d 741, 66 *N. W.* 2d 623 (*Sup. Ct.* 1954). In *City of Beverly Hills v. Brady,* 34 *Cal.* 2d 854, 215 *P.* 2d 460, 461 (*Sup. Ct.* 1950) the distribution by a doctor of his syndicated column devoted to health problems was held not improper for, as the court found, it did not "interfere with the use or appearance of his home or premises as a residence" nor did it affect "the residential or aesthetic character of the district." While the aforecited cases may properly be said to have rested

upon particular ordinance provisions they nevertheless evidenced sympathetic judicial application of zoning requirements which, while permitting consistent incidental uses, were well calculated to preserve the residential nature of the district. See *King County v. Lunn,* 32 *Wash.* 2d 116, 200 *P.* 2d 981 (*Sup. Ct.* 1948); *Village of Riverside v. Kuhne,* 335 *Ill. App.* 547, 82 *N. E.* 2d 500 (*App. Ct.* 1948). *Cf. Keller v. Town of Westfield,* 39 *N. J. Super.* 430, 436 (*App. Div.* 1956).

It seems to me that the highly regulated business of operating a beauty salon—which under state requirements must be conducted as an independent commercial enterprise always separated from living quarters—may not fairly be considered as a permissible occupation within the intendment of section 6, which is merely designed to sanction incidental home work not in impairment of the basic integrity of the residential character of the neighborhood. In *Dobres v. Schwartzman,* 191 *Md.* 19, 59 *A.* 2d 684, 686 (1948), the Maryland Court of Appeals sustained an order which cancelled the issuance of a permit for the operation of a beauty shop in a dwelling located in a residential zone; while the decision involved an interpretation of the Baltimore zoning ordinance the following excerpt from the court's opinion is particularly apt here:

"We need not determine the abstract question whether a 'beautician' is a member of a profession, or whether the operation of a beauty parlor in any circumstances may be a customary home occupation. It is sufficient to say that State law, and a regulation which appellant proposes to obey, prevent the operation of a beauty parlor as a home occupation or an accessory use. It is 'unlawful for any person to practice beauty culture * * * in any place other than a registered beauty shop.' Code, Art. 43, sec. 479. It is unlawful to 'use for residential purposes any room used wholly or in part as a beauty shop.' Section 489. A rule of the State Board of Hairdressers and Beauty Culturists requires that each beauty shop be designated by a sign, clearly visible at the entrance to the establishment. There is no provision of the Ordinance to sustain the action of the Board, and its action in issuing the permit in this case was unlawful. *Lipsitz v. Parr,* 164 *Md.* 222, at [*page*] 228, 164 *A.* 743; *Mayor & City Council* [*of Baltimore*] *v. Shapiro,* [187 *Md.* 623] 51 *A.* 2d 273."

I would reverse the judgment entered in the Law Division. HEHER, J., joins in this dissent.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD and BURLING—4.

*For reversal*—Justices HEHER and JACOBS—2.