707 A.2d 1061

DONALD ADAMS, LINDY FOOTE [1], WILLIAM H. GARRISON, SR., JEAN REDSTONE, JAMES WHITESELL AND DAVID COUTCH, PLAINTIFFS-APPELLANTS, v. PAUL L. DEL-MONTE, TOWNSHIP OF UPPER PITTSGROVE, ZONING BOARD OF ADJUSTMENT OF TOWNSHIP OF UPPER PITTS-GROVE, PLANNING BOARD OF UPPER PITTSGROVE TOWN-SHIP, AND ROBERT GERLACK, ZONING OFFICER, DEFEN-DANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 17, 1998—Decided March 26, 1998.

------

[1] Charles Lindefoot is incorrectly named as Lindy Foote in the complaint.

Before Judges HAVEY, NEWMAN and BILDER.

*Patrick F. McAndrew* argued the cause for appellants (*Mr. McAndrew,* on the brief).

*Ned P. Rogovoy* argued the cause for respondent Paul L. DelMonte (*Waltman, Reilly & Rogovoy,* attorneys; *Mr. Rogovoy,* on the brief).

*John G. Hoffman,* attorney for respondents Township of Upper Pittsgrove, Zoning Board of Adjustment of Township of Upper Pittsgrove, Planning Board of Upper Pittsgrove Township and Robert Gerlack, Zoning Officer, filed a statement in lieu of brief.

The opinion of the court was delivered by

HAVEY, P.J.A.D.

In this land-use litigation, defendant Zoning Board of the Township of Upper Pittsgrove determined that defendant Paul L. DelMonte's septic tank cleaning business, operated out of his residence, was a "home occupation" qualifying as a conditional use under the Township's zoning ordinance. Eight months later, the defendant Planning Board granted DelMonte's conditional use application.

Plaintiffs, DelMonte's neighbors, challenged both the Zoning Board's interpretation of the ordinance and the Planning Board's conditional use approval. The trial judge concluded that plaintiffs' challenge to the Zoning Board's determination was time-barred under *R.* 4:69–6(b)(3). The judge also upheld the Planning Board's grant of the conditional use permit to DelMonte, rejecting plaintiffs' contention that the Township's conditional use ordinance was unconstitutionally vague. We hold that, while plaintiffs' complaint challenging the Zoning Board's decision was untimely, the trial judge should have invoked the "interest of justice" exception under *R.* 4:69–6(c). We also conclude that, on the stipulated facts, DelMonte's septic tank cleaning service is not a "home occupation." Accordingly, we reverse and remand the matter for the entry of judgment in plaintiffs' favor.

DelMonte's property, approximately thirty acres, is located in the LR–CL zone (low density residential-cluster option). The zone embraces a wooded, environmentally-sensitive area. The purpose of the zone is to restrict concentrated development which may have an adverse impact on the environment. Permitted uses include agriculture and single-family dwellings on two-acre lots. The ordinance permits a variety of conditional uses, including

recreational facilities, nursery schools, health care facilities and libraries. All conditional uses are subject to certain general standards, not directly pertinent to the issues before us.

Home occupations are also among the permitted conditional uses. The ordinance defines a "home occupation" as:

> An occupation or profession which is clearly incidental to the use of the lot and dwelling for residential purposes and which complies with the standards and requirements of the Zoning Chapter.

A home occupation is permitted only as a "conditional accessory use for a single family detached dwelling unit[.]" The home occupation must be operated by a family member, have no more than two nonresident employees, and utilize no more than twenty-five percent of the gross habitable floor area of the residential structure. Further, no more than one sign is permitted on the residential lot identifying the home occupation. The residential character of the lot and building shall not be changed by the profession, business or service operated by the owner, and "[n]o occupational sounds shall be audible at any property line...."

DelMonte, who has been in the business of cleaning septic tanks since 1959, purchased the subject property around 1992. It is improved with a single-family dwelling and an out-building for the storage of equipment. DelMonte keeps a small number of cattle, hogs and chickens on the property and farms approximately twenty acres.

Responding to neighbors' complaints, Zoning Officer Robert Gerlack inspected DelMonte's property in May 1994. He observed three tank trucks, and learned that at least one other person was working with DelMonte in the septic tank cleaning business. Gerlack advised DelMonte that his business was a home occupation and instructed him to apply to the Planning Board for a conditional use permit. The Planning Board declined to consider the application since there had been no determination by the Zoning Board respecting the correctness of the Zoning Officer's interpretation of the home occupation provision of the ordinance. The Planning Board did not retain jurisdiction.

The matter was presented to the Zoning Board as an appeal from the Zoning Officer's interpretation of the ordinance. *See* *N.J.S.A.* 40:55D–70a. At the September 22, 1994 Zoning Board hearing, DelMonte stated that his business utilized two operating tank trucks, and that he had one inoperable tank truck on the premises. His business consists of taking phone calls in his house from potential customers and then dispatching one or both of the trucks, which usually start out around 8 a.m. and finish between 3 p.m. and 6 p.m., with occasional late night emergency calls. DelMonte has one other employee. He acknowledged that on occasion he had transferred sewage into the inoperable truck. However, he stated that he ultimately takes the sewage to the County Utilities Authority. He denied storing the sewage waste overnight.

Several neighbors testified, complaining of noise in the early morning, sometimes starting at 3:30 a.m., from truck traffic entering and leaving DelMonte's property as often as seven times a day. One neighbor complained of a "chemical-type smell" emanating from the premises. Plaintiff, Charles Lindefoot, testified that after noticing an "awful smell of sewage," he went to DelMonte's property and observed "sewage dumped on the ground next to the woods near my property." Lindefoot was deeply concerned about the dumping because of a nearby stream which runs through the neighborhood. Plaintiff, Donald Adams, testified that he had observed a transfer of sewage product from a "honey wagon" to a black trailer on DelMonte's property. At one point during Adams' testimony, a question was raised concerning the number of gallons of septic waste being hauled to and from the site.

By resolution dated October 27, 1994, and published on November 9, 1994, the Zoning Board upheld the decision of the Zoning Officer that DelMonte's enterprise was a home occupation. The Board found in part:

Thus, the Board has based its decision on the use of two "tanker" trucks by Mr. DelMonte, the fact that he has two non-resident employees, will construct no separate office or facilities to be used in his septic business and that he will not store or transfer septic waste on the property. Under these facts, the Board

concludes that the proposed use falls within the term "home occupation" as that term is defined by the Township Land Development Ordinance.

In April 1995, DelMonte resubmitted his application to the Planning Board for a conditional use permit and for site plan approval. On May 11, 1995, the Planning Board approved the applications subject to several conditions, including limitation on the hours of operation, installation of a "containment" area and a buffer of trees, use of only two trucks and elimination of the tank truck as a repository for sewage.

Plaintiffs filed their action in lieu of prerogative writs on August 3, 1995, challenging the determinations of both the Zoning and Planning Boards. Plaintiffs moved for summary judgment, arguing that the Zoning Board was wrong as a matter of law in concluding that DelMonte's septic tank cleaning service was a permitted home occupation. DelMonte cross-moved to dismiss that portion of the complaint challenging the Zoning Board's decision on the basis that the complaint was filed well beyond the forty-five day limitation period provided for under *R.* 4:69–6(b)(3). The motion judge agreed with DelMonte and dismissed the challenge to the Zoning Board's decision. The judge held that the Zoning Board's ruling constituted a final and appealable decision, and plaintiffs' failure to challenge that decision within forty-five days barred judicial review. Thereafter, the judge rejected plaintiffs' constitutional challenge to the conditional use ordinance and upheld the Planning Board's issuance of the conditional use permit and site plan approval.

I

As a general rule, actions in lieu of prerogative writs must be instituted not later than forty-five days after the accrual of the right to review. *R.* 4:69–6(a). An action to review a zoning board decision must be commenced not later than forty-five days from the publication of a notice of the board's determination. *R.* 4:69–6(b)(3). The forty-five day rule is "aimed at those who slumber on their rights," *Schack v. Trimble,* 28 *N.J.* 40, 49, 145 *A.*2d 1 (1958),

and is designed to provide a measure of repose to both governmental agencies and developers. *Reilly v. Brice*, 109 *N.J.* 555, 559, 538 *A.*2d 362 (1988); *Washington Tp. Zoning Bd. of Adjust. v. Washington Tp. Planning Bd.*, 217 *N.J.Super.* 215, 225, 525 *A.*2d 331 (App.Div.), *certif. denied*, 108 *N.J.* 218, 528 *A.*2d 36 (1987); *Country Chevrolet, Inc. v. North Brunswick Tp. Planning Bd.*, 190 *N.J.Super.* 376, 380, 463 *A.*2d 960 (App.Div.1983).

Plaintiffs contend that the forty-five day time limitation under *R.* 4:69–6(b)(3) is inapplicable because the Zoning Board decision was not "final." They argue that the Zoning Board's decision "is an important link in the chain of meetings and decisions that took place at the municipal level, but it is clearly an interim link and not a final decision." Plaintiffs rely on *R.* 4:69–5, which states:

Except where it is manifest that the interest of justice requires otherwise, actions under R. 4:69 shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted.

Plaintiffs reason that the Zoning Board's decision was not appealable until DelMonte exhausted his administrative remedies by obtaining a conditional use permit and site plan approval from the Planning Board. We reject the argument.

The exhaustion rule is intended to: (1) ensure that claims will be heard, as a preliminary matter, by a body possessing expertise in the area; (2) allow the possibility that administrative resolution of the dispute would obviate the need to institute suit; and (3) create a factual record necessary for meaningful appellate review. *Paterson Redevelopment Agency v. Schulman*, 78 *N.J.* 378, 386–87, 396 *A.*2d 573, *cert. denied*, 444 *U.S.* 900, 100 *S.Ct.* 210, 62 *L.Ed.*2d 136 (1979); *Atlantic City v. Laezza*, 80 *N.J.* 255, 265, 403 *A.*2d 465 (1979); *Board of Educ. of Bernards Tp. v. Bernards Tp. Educ. Ass'n*, 79 *N.J.* 311, 317, 399 *A.*2d 620 (1979). These purposes were served here when the administrative process played itself out and the Zoning Board ultimately classified DelMonte's business as a home occupation. At that point, the decision of the Board was completely dispositive of the home occupation issue. A full record of the Zoning Board proceedings and its findings and legal conclusions was available for judicial review.

No other administrative forum was available to plaintiffs to hear and decide the issue. Thus, the right to immediate judicial relief was acquired upon the Zoning Board's publication of its decision.

A further problem with plaintiffs' position is that, if adopted, no decision of a zoning board would be "final" for purposes of judicial review where an applicant needs an additional local approval in order to proceed with its proposed development. A logical extension of plaintiffs' argument is that a zoning board's grant of a special reasons variance (*N.J.S.A.* 40:55D–70d) to a developer need not be challenged until the developer ultimately applies for and obtains site plan approval for the project. *See N.J.S.A.* 40:55D–76b. Such a delay makes no sense, and is unfair to the developer who is entitled to some measure of repose.

■ For example, a developer may seek variance approval first to avoid expending substantial sums in preparing a site plan for the proposal when the use itself may be denied. *See ibid;* William M. Cox, *New Jersey Zoning and Land Use Administration* § 14–2 at 278 (Gann, 1997). In that event, the variance determination by the board is an independent, judicially reviewable decision; the court need not consider whether the developer's proposal ultimately satisfies the standards of the township's site plan ordinance. Therefore, as a general proposition, a zoning board's decision is a "final" appealable decision, notwithstanding the fact that the developer may still be required to apply for a site plan or conditional use approval for the same development. We therefore conclude that plaintiffs' right to challenge the Zoning Board's determination accrued on November 9, 1994, when the Zoning Board published its decision. Their complaint challenging the decision, filed nine months later, was clearly untimely.

II

■ *R.* 4:69–6(c) provides for the relaxation of the forty-five day time limit "where it is manifest that the interest of justice so requires." The exception is typically applied to "cases involving (1) important and novel constitutional questions; (2) informal or *ex*

*parte* determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification." *Brunetti v. Borough of New Milford,* 68 *N.J.* 576, 586, 350 *A.2d* 19 (1975) (footnotes omitted). *Accord Reilly, supra,* 109 *N.J.* at 558, 538 *A.2d* 362; *Damurjian v. Board of Adjust. of Colts Neck,* 299 *N.J.Super.* 84, 98, 690 *A.2d* 655 (App.Div.1997). *See also Schack, supra,* 28 *N.J.* at 45–51, 145 *A.2d* 1.

None of the exceptions apply here. The case does not present any important and novel constitutional questions. The appeal is from a zoning board decision following a formal and adversary hearing, not from an *ex parte* determination of a zoning official. Plaintiffs rely on exception (3), arguing that "[t]here is a strong public interest in maintaining the integrity of the Zoning Code and certainly in limiting actual uses within a zone [than] only those specifically permitted by the local zoning ordinance." We disagree. That argument can be made in every zoning case and, if accepted, would emasculate the time-limitation rule. The present controversy affects but a single tract of land and a small number of people, DelMonte and his immediate neighbors.

Nevertheless, the unique factual setting here, as it unfolded during the administrative process, "properly calls for an exercise of judicial discretion to enlarge the time to review" the Zoning Board's determination. *Reilly, supra,* 109 *N.J.* at 560, 538 *A.2d* 362. This is so because the full aspect of DelMonte's enterprise did not become apparent until the subsequent Planning Board hearing was conducted.

In its October 27, 1994 resolution, the Zoning Board rested its decision that DelMonte's business was a home occupation in part on the fact that "he will not store or transfer septic waste on the property." The Zoning Board also concluded that the "objecting neighbors had valid concerns relating to the proposed use. These concerns, related to hours of operation, dust, odor and noise, should be more properly addressed by the Planning Board at the time Mr. DelMonte applies for conditional use approval." Based

on these findings by the Zoning Board, it is not unreasonable to conclude that plaintiffs may initially have passed on a judicial challenge to the Zoning Board's decision.

What developed during the subsequent Planning Board hearing presented an entirely different picture. According to the June 8, 1995 Planning Board resolution, there was substantial testimony during the hearing concerning the presence of septic waste and the possibility of spillage on DelMonte's site. Consequently, the Planning Board required a "containment" area of approximately 30 feet by 40 feet, on which DelMonte's 3,000 gallon vacuum containment tanker trucks would be parked. The Planning Board resolution provides:

No more than two vacuum containment tanker trucks may be garaged or stored on the site at any time and no septage shall be stored anywhere on the site *except* for within the two vacuum containment tanker trucks and in accordance with NJDEP regulations.

[Emphasis added.]

These Planning Board findings and conditions conflict with the Zoning Board's findings that no waste would be stored or transferred on DelMonte's property. The full nature and extent of DelMonte's operation did not become apparent until the Planning Board adopted its resolution. Thus, a meaningful factual basis to challenge the whole notion that DelMonte's enterprise was a home occupation did not emerge until the Planning Board's findings.

Moreover, DelMonte was not prejudiced by plaintiffs' delay in filing their complaint. DelMonte knew all along that he needed Planning Board authority to continue his operation and that plaintiffs opposed the use. We were advised at oral argument that he has continued his operation to the present day. The record does not indicate that he has altered or added to his business in reliance on the fact that plaintiffs did not file their complaint within forty-five days of the Zoning Board determination. We conclude that equity dictates that the time bar should have been relaxed in the interest of justice.

## III

Because the trial judge dismissed plaintiffs' complaint against the Zoning Board as untimely, he did not address the central issue: whether DelMonte's septic tank cleaning business constituted a home occupation under the zoning ordinance.

Ordinarily, our view of a determination by a zoning board is confined to the record before it. *See Tomko v. Vissers,* 21 *N.J.* 226, 241, 121 *A.*2d 502 (1956); *Kempner v. Township of Edison,* 54 *N.J.Super.* 408, 417, 149 *A.*2d 251 (App.Div.1959). In the usual course, factual determinations by the board are presumed to be valid, and its exercise of authority based on those facts is sustainable absent a showing that the board's actions are arbitrary, capricious or unreasonable. *Burbridge v. Township of Mine Hill,* 117 *N.J.* 376, 385, 568 *A.*2d 527 (1990).

Here, however, whether a septic tank cleaning service qualifies as a home occupation under the ordinance is essentially a legal question. The standard of review is *de novo;* ordinance interpretation is a judicial function and the conclusions of a zoning board are not entitled to any special deference. *See Wyzykowski v. Rizas,* 132 *N.J.* 509, 518, 626 *A.*2d 406 (1993); *James R. Ientile, Inc. v. Zoning Bd. of Adjust. of Colts Neck,* 271 *N.J.Super.* 326, 329, 638 *A.*2d 882 (App.Div.1994); *Jantausch v. Borough of Verona,* 41 *N.J.Super.* 89, 96–97, 124 *A.*2d 14 (Law Div.1956), *aff'd,* 24 *N.J.* 326, 131 *A.*2d 881 (1957). The parties agreed during oral argument before us that the factual basis upon which the home occupation issue is to be resolved is not confined to the facts elicited during the Zoning Board hearing. Both counsel agreed that the evidence adduced during both the Zoning and Planning Board hearings, and the findings of both Boards should be considered. With those stipulations, we address the issue on a *de novo* basis.

As stated, the ordinance before us treats home occupations as conditional accessory uses. The ordinance defines an accessory use as one which is "customarily incidental and subordinate to the

principal use . . . ." The ordinance also states that a home occupation is an occupation or profession which is "clearly incidental" to the main use as a residence.

We have viewed the term "incidental," in the definition of accessory uses as incorporating two concepts: the use must be "subordinate and minor in significance"; it must also bear a "reasonable relationship with the primary use." *Charlie Brown of Chatham, Inc. v. Board of Adjust. of Chatham*, 202 *N.J.Super.* 312, 324, 495 *A.2d* 119 (App.Div.1985). We observed "[i]t is not enough that the use be subordinate; it must also be attendant or concomitant. To ignore this latter aspect of 'incidental' would be to permit any use which is not primary, no matter how unrelated it is to the primary use." *Ibid.* In *Charlie Brown*, we held that the applicant failed to establish that "providing employees sleeping quarters on the premises of a restaurant is reasonably related or incidental to the operation of a restaurant under present day standards." *Ibid.*

An ordinance defining "home occupations," similar to the one before us, has been construed as intending "to permit only such light occupations in the home that could not change the character of the building from a home to a business or industrial establishment." *Jantausch v. Borough of Verona*, 24 *N.J.* 326, 334, 131 *A.2d* 881 (1957). Consequently, the primary use of the premises by the occupant must be residential and the "home occupation" engaged in "must be clearly incidental thereto." *Ibid.*

> [T]he 'home occupation' must be such, even though it be a gainful pursuit, as can and must be carried on in a manner consistent with the use of the premises as a residence within the intent of the provisions of this particular ordinance.
>
> [*Ibid.*]

*See also* Arden H. and Daren A. Rathkopf, 2 *The Law of Zoning and Planning*, § 23–01 (4th ed.1985). Thus, a small beauty shop in the garage of one's home has been deemed a home occupation. *Jantausch, supra,* 24 *N.J.* at 329, 335, 131 *A.2d* 881. In contrast, a small day-care center for twelve to eighteen children was not a home occupation because:

the intensity of the use of the building as a day care center, the incidence of transportation of the children to and from the building on a daily basis and the occasional noise experienced by neighbors when the children played outdoors seem to us to combine to severely affect the character of the building ... as a home. [*Schofield v. Zoning Bd. of Adjust. of Dennis,* 169 *N.J.Super.* 150, 151, 155, 404 A.2d 357 (App.Div.1979) (footnote omitted).]

 Carrying on a septic tank cleaning service wherein the principal activity is the arrival and departure of 3,000 gallon trucks, in some instances containing septic waste, bears no resemblance to the types of activities traditionally recognized as home occupations. It is undisputed that the trucks are dispatched regularly during day hours and occasionally at night in the event DelMonte receives an emergency call. The fact that the neighbors recorded complaints about noise emanating from the truck traffic was not disputed. On this point, the Zoning Officer's comparison of DelMonte's business with that of a carpenter or electrician is unsound; most carpenters and electricians would not ordinarily be driving large trucks in and out of the premises on a regular basis.

Moreover, both the Zoning and Planning Boards acknowledged that the transfer and storage of septic waste, regulated by the State Department of Environmental Protection, may be inimical to the public good. The Zoning Board addressed that problem by concluding that DelMonte would not "store or transfer" septic waste on his premises. However, as stated, no such condition was imposed by the Planning Board which provided in its resolution that "no septage shall be stored anywhere on the site *except* for within the two [3,000 gallon] vacuum containment tanker trucks and in accordance with NJDEP regulations." (Emphasis added). DelMonte's engineer, in describing the proposed "containment" area where the trucks would be parked, noted that its location on the site "preclud[ed] the possibility of spilled septage from reaching" a nearby stream on the property. The engineer also testified that the liquids held in the trucks were "akin to the septic effluent from a septic system," and that spillage or tank failure, although "extremely remote," would "percolate through the soil much like the percolation in a septic system." Thus, the Planning Board

required the containment area "so as to contain a spill" from the two "fully loaded 3,000 gallon capacity trucks," and that DelMonte notify the NJDEP and the Township within twelve hours of "any [septic] spill." These sensitive activities and potential health and general welfare concerns are hardly "subordinate and minor in significance," nor do they bear a reasonable relationship with DelMonte's residence. *Charlie Brown of Chatham, Inc., supra,* 202 *N.J.Super.* at 324, 495 *A.2d* 119. They distinguish DelMonte's enterprise from the dispatching of a truck from a residence for the purpose of off-site electrical repair or carpentry work.

Reversed and remanded for the entry of a judgment in plaintiffs' favor.