38 A.3d 675 (2012)
424 N.J. Super. 501
Enzio COLUMBRO, Karen A. Columbro, and Larry Marino, Plaintiffs-Appellants,
v.
LEBANON TOWNSHIP ZONING BOARD OF ADJUSTMENT, Michael Edwards, and Frances Edwards, Defendants-Respondents.
Docket No. A-4558-10T3
Superior Court of New Jersey, Appellate Division.
Submitted February 27, 2012.
Decided March 23, 2012.
*676 Courter, Kobert & Cohen, attorneys for appellants (Michael B. Lavery, of counsel; James F. Moscagiuri, Hackettstown, on the brief).
John P. Gallina, Flemington, attorney for respondent Township of Lebanon.
Scholl, Whittlesey & Gruenberg, LLC, attorneys for respondents Michael Edwards and Frances Edwards (Steven P. Gruenberg, of counsel and on the brief).
Before Judges SABATINO, ASHRAFI and FASCIALE.
*677 The opinion of the court was delivered by
FASCIALE, J.A.D.
Plaintiffs Enzio Columbro and Karen Columbro (husband and wife) and Larry Marino appeal from a April 8, 2011 order dismissing their complaint in lieu of prerogative writs and affirming a May 26, 2010 resolution of the Lebanon Township Zoning Board of Adjustment (the Board) granting a conditional use variance to defendants Michael Edwards and Frances Edwards (the Edwards) to operate a welding business from their residential property. We affirm.
On appeal, plaintiffs contend that the trial court erred in concluding that under the Lebanon Township Ordinance, the Edwards' 2,150 sq. ft. garage constituted an "accessory" to their residence, and that their business constituted a "home occupation." Plaintiffs also argue that the Board's decision to grant a conditional use variance to the Edwards was arbitrary, capricious, and unreasonable, and that the trial court should have reversed the decision.
We affirm substantially for the reasons articulated in the cogent decision of Judge Peter A. Buchsbaum, who conducted the prerogative writs trial. Columbro v. Lebanon Twp. Zoning Bd. of Adjustment, L-469-10 (Law Div. April 8, 2011) (slip op. at 1-2). Given the circumstances of the Edwards' conditional use and the liberal nature of the Lebanon Township Ordinance, the judge correctly determined that the welding business could be appropriately classified as a "home occupation." Further, we conclude that the Board's action was not arbitrary, capricious, or unreasonable, and that the judge properly affirmed its grant of the variance.

I.
In 1998, the Edwards purchased a 6.4 acre parcel of property in Lebanon Township and began operating a welding business known as "Off Road Welding, Inc." The property is located within the "residential, resource conservation district" (RC zone), an area that requires a minimum lot of 7.5 acres for a single-family home. The property contains the Edwards' 1,676 sq. ft. home and their 2,150 sq. ft. three-bay garage, which has two outside two-story storage racks for metals and other materials.
On December 5, 2008, the Edwards filed an application with the Board for a "conditional use" variance pursuant to N.J.S.A. 40:55D-70d(3) to operate a "home occupation" from the garage. Pursuant to Lebanon Township's Ordinance, a "home occupation" is a "conditional use" permitted in the RC zone. Ordinance 400-4 (definitions) defines "home occupation" as "[a]ny activity, except an exempt home occupation, carried out for gain by a resident conducted as a conditional use in the resident's dwelling unit or permitted accessory building." The ordinance defines "accessory use or structure" as "[a] use or structure subordinate to and customarily incidental to the principal use or structure on the same lot." Ordinance 400-11B(6)(a) lists ten applicable standards governing a "home occupation":
[1] The home occupation shall be conducted entirely within a principal building or a permitted accessory building.
[2] Not more than 20% of the gross floor area of the principal building, not including any cellar, shall be used for the home occupation, and the home occupation shall not occupy more than 2,000 square feet of all buildings.
[3] Not more than two light commercial vehicles may be kept on the premises *678 in connection with the home occupation.
[4] Not more than two nonresidents of the premises shall be employed in connection with the home occupation.
[5] Not more than one delivery and one shipment per day of goods, chattels, materials, supplies, or items of any kind shall be made either to or from the premises in connection with the home occupation except in a vehicle owned by the resident and kept on the premises.
[6] Not more than two home occupations shall be permitted in a principal building and/or the permitted accessory building.
[7] There shall be no nuisance element detectable beyond the property line in connection with the home occupation.
[8] The amount and method of storage of any hazardous material proposed to be kept on the premises shall be indicated on the application.
[9] Only a single sign, not to exceed 20 inches by 30 inches, shall be permitted.
[10] The municipal agency having jurisdiction shall determine a reasonable off-street parking requirement consistent with proposed use and zoning ordinance.
Essentially, the Edwards' application sought three variances from those standards: Ordinance 400-11B(6)(a)(1) (all activities to be conducted inside); Ordinance 400-11B(6)(a)(2) (gross floor area of buildings devoted to accessory use not to exceed 2,000 sq. ft.); and Ordinance 400-11B(6)(a)(4) (no more than two nonresidential employees).[1]
The Board conducted six nonconsecutive days of hearings spread over a year and heard testimony from several neighbors concerned about their property value and quality of life. The Columbros also testified that the Edwards' business produced loud noises, noxious odors, vehicular commotion, dust and dirt, and property destruction.
Plaintiffs presented expert testimony from David Zimmerman, a professional planner, who opined that there was a substantial impact on surrounding properties in violation of the ordinance. Zimmerman quoted the definition of accessory use in Lebanon Township as "a use or structure subordinate to and customarily incidental to the principal structure on the same lot." He stated that there was a need for the variances and noted Columbro's testimony regarding excessive fumes, odors, noise, and activity. Zimmerman identified three non-conformities on the property: a lot size of 6.44 acres rather than 7.5 acres; a lot width of 131 feet rather than 350 feet; and a lot width of 235 feet rather than 350 feet. He also opined that the lot was too small for the welding business, and that there were 9,000 sq. ft. occupied by the paved area, garage, and storage area. Nonetheless, during cross-examination, he agreed that he did not highlight or include the residential driveway, dog pen, or play area as residential use, and that while the garage is 121 feet from the rear property line, adjacent residences are 294 feet and 305 feet from the property lines.
Defendants presented the testimony of James Chmielak, a professional planner and engineer. Chmielak testified that the garage driveway was separated from the *679 house driveway, and that the house sits back substantially from the road. He testified that the garage is 430 to 530 feet away from neighboring homes with a substantial buffer of trees between the neighboring properties. Chmielak also testified that noise levels were essentially in compliance, and that business-related noise was less than the decibel level of someone talking. He noted that there was glare from a 75-watt light bulb positioned twenty feet above the ground on the garage, but suggested shielding it. He noted that he had not observed fumes, vapors, or gases from work activities, and that the New Jersey Department of Environmental Protection (NJDEP) did not consider oxygen and acetylene as hazardous materials. On cross-examination, Chmielak admitted that the property was located in the RC zone requiring 7.5 acres, but was only 6.44 acres. However, he noted that the property was previously conforming in a zone that only required 5 acres.
At its April 8, 2010 hearing, the Board granted the conditional use variances requested in the application, and granted site plan approval. On May 26, 2010, the Board adopted a thirty-four-page memorializing resolution, which comprehensively reviewed the evidence and testimony adduced during the hearings.[2]
Subsequently, plaintiffs filed a complaint in lieu of prerogative writs, and Judge Buchsbaum conducted the trial. On April 8, 2011, the judge entered an order upholding the Board's decision except for the Board's grant of a variance pertaining to the number of nonresident employees.[3] Judge Buchsbaum also issued an extensive and comprehensive twenty-four-page written decision. Columbro v. Lebanon Twp. Zoning Bd. of Adjustment, supra, slip op. at 1-2. This appeal followed.

II.
On appeal, plaintiffs argue that the trial court erred in affirming the Board's determination that the Edwards' garage use was "accessory" to their residential use and should be classified as a "home occupation." Plaintiffs contend that the welding business does not constitute a "home occupation" because it "change[s] the character of the property from residential to commercial or industrial" and is not "incidental" to the primary residential use.
Plaintiffs also argue that the Board's grant of the conditional use variance constituted arbitrary, capricious, and unreasonable action. They assert that the Edwards "failed to offer an[y] legitimate `special reasons' for the award of variance relief and utterly failed to show that the property is appropriate for the use or that it can accommodate the problems associated with the use." Additionally, plaintiffs claim that the Edwards' business has created nuisances, which "contravene the applicable [ordinance] with respect to smoke, fly ash, dust, fumes, noise, odor, vibration and glare."
Our review of "a municipal board's action on zoning and planning matters, such as variance applications, [is] limited to determining whether the board's decision was arbitrary, unreasonable, or capricious." Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J.Super. 177, 198, 778 A.2d 482 (App.Div.2001) (citing Kramer v. Bd. *680 of Adjustment of Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965)). Local zoning boards have "peculiar knowledge of local conditions [and] must be allowed wide latitude in the exercise of delegated discretion." Kramer, supra, 45 N.J. at 296, 212 A.2d 153. Thus, "[c]ourts cannot substitute an independent judgment for that of the boards in areas of factual disputes; neither will they exercise anew the original jurisdiction of such boards or trespass on their administrative work." Ibid. The crucial question for our review is "whether the board followed the statutory guidelines and properly exercised its discretion." Med. Ctr. at Princeton, supra, 343 N.J.Super. at 199, 778 A.2d 482 (citing Burbridge v. Governing Body of Mine Hill, 117 N.J. 376, 385, 568 A.2d 527 (1990)).
Nonetheless, "the interpretation of an ordinance is primarily a question of law." Wyzykowski v. Rizas, 132 N.J. 509, 518, 626 A.2d 406 (1993); see Adams v. DelMonte, 309 N.J.Super. 572, 583, 707 A.2d 1061 (App.Div.1998) (stating that whether a septic tank cleaning business constitutes a "home occupation" is "essentially a legal question" and recognizing the standard of review as de novo). Moreover, we note that a "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995) (citing State v. Brown, 118 N.J. 595, 604, 573 A.2d 886 (1990)).

III.
We begin by summarizing briefly the applicable legal principles governing variances, conditional uses, and home occupations. Pursuant to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to-163, zoning boards may grant variances "[i]n particular cases for special reasons" to permit "deviation from a specification or standard ... pertaining solely to a conditional use[.]" N.J.S.A. 40:55D-70(d)(3). The MLUL defines a "conditional use" as
a use permitted in a particular zoning district only upon a showing that such use in a specified location will comply with the conditions and standards for the location or operation of such use as contained in the zoning ordinance, and upon the issuance of an authorization therefor by the planning board.
[N.J.S.A. 40:55D-3.]
The statute further states:
No variance or other relief may be granted under the terms of this section, including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
[N.J.S.A. 40:55D-70(d)(3).]
In Coventry Square, Inc. v. Westwood Zoning Board of Adjustment, 138 N.J. 285, 650 A.2d 340 (1994), the New Jersey Supreme Court "enunciated a modified version of the traditional negative and positive criteria standard tailored specially for the conditional use context." Cox & Koenig, New Jersey Zoning & Land Use Administration, § 17-4.2 (2011). The Court "lightened the burden on an applicant seeking a d(3) variance," ibid., and set forth in detail the standard to be applied in future conditional use cases:
We hold that the proof of special reasons that must be adduced by an applicant for a "d" variance from one or more conditions imposed by ordinance in respect of a conditional use shall be proof sufficient to satisfy the board of adjustment that the site proposed for the conditional *681 use, in the context of the applicant's proposed site plan, continues to be an appropriate site for the conditional use notwithstanding the deviations from one or more conditions imposed by the ordinance. That standard of proof will focus both the applicant's and the board's attention on the specific deviation from conditions imposed by the ordinance, and will permit the board to find special reasons to support the variance only if it is persuaded that the non-compliance with conditions does not affect the suitability of the site for the conditional use. Thus, a conditional-use variance applicant must show that the site will accommodate the problems associated with the use even though the proposal does not comply with the conditions the ordinance established to address those problems.
[Coventry Square, supra, 138 N.J. at 298-99, 650 A.2d 340.]
The Court then detailed a slightly revised conditional use standard for meeting the traditional "negative criteria":
In respect of the first prong of the negative criteria, that the variance can be granted "without substantial detriment to the public good," N.J.S.A. 40:55D-70, the focus is on the effect on surrounding properties of the grant of the variance for the specific deviations from the conditions imposed by ordinance. "The board of adjustment must evaluate the impact of the proposed [conditional-]use variance upon the adjacent properties and determine whether or not it will cause such damage to the character of the neighborhood as to constitute `substantial detriment to the public good.'" In respect of the second prong, that the variance will not "substantially impair the intent and purpose of the zone plan and zoning ordinance," N.J.S.A. 40:55D-70(d), the board of adjustment must be satisfied that the grant of the conditional-use variance for the specific project at the designated site is reconcilable with the municipality's legislative determination that the condition should be imposed on all conditional uses in that zoning district.
[Id. at 299, 650 A.2d 340 (alteration in original) (citations omitted).]
The meaning of "home occupation" requires interpretation of the language of the municipal ordinance at issue in a given case. See Jantausch v. Borough of Verona, 24 N.J. 326, 334-35, 131 A.2d 881 (1957). Thus, in determining whether a beauty salon qualified as a home occupation, the Supreme Court has explained:
The ordinance[,] in limiting the "home occupations" to "such occupations as shall be conducted solely by resident occupants" and requiring "no display of products shall be visible from the street[,]" indicates an intention to permit only such light occupations in the home that could not change the character of the building from a home to a business or industrial establishment. Cf. Lemp v. Millburn Township, 129 N.J.L. 221 [28 A.2d 767] (Sup.Ct.1942); State v. Mair, 39 N.J.Super. 18 [120 A.2d 487] (App.Div.1956). The primary use of the premises by the occupant must be residential and the "home occupation" engaged in must be clearly incidental thereto. Thus, the "home occupation" must be such, even though it be a gainful pursuit, as can and must be carried on in a manner consistent with the use of the premises as a residence within the intent of the provisions of this particular ordinance.
[Id. at 334, 131 A.2d 881.]
Additionally, the Court has stated that "it is obvious that a use incidental to the use of the premises as a residence might as a matter of law be effectively carried on in *682 the garage as well as in the main part of the house." Id. at 332, 131 A.2d 881.

IV.
On appeal, plaintiffs rely on Adams, supra, 309 N.J.Super. at 584-85, 707 A.2d 1061, to support their contention that the Edwards' business should not be considered a "home occupation." They argue that the welding business is not "incidental" to the principal use of the property as a residence, and they suggest that the Edwards' use must qualify as "light occupation." Plaintiffs further contend that the welding business alters "the character of the property from residential to commercial or industrial." We disagree.
In Adams, we considered whether a septic tank cleaning business, operated from the defendant's residence, could constitute a "home occupation." Id. at 575, 707 A.2d 1061. We were guided by the Supreme Court's decision in Jantausch, in which the Court construed "home occupation," in an ordinance similar to the one at issue in Adams, "`to permit only such light occupations in the home that could not change the character of the building from a home to a business or industrial establishment.'" Id. at 584, 707 A.2d 1061 (quoting Jantausch, supra, 24 N.J. at 334, 131 A.2d 881). We concluded that under the ordinance in Adams, "[c]arrying on a septic tank cleaning service wherein the principal activity is the arrival and departure of 3,000 gallon trucks, in some instances containing septic waste, bears no resemblance to the types of activities traditionally recognized as home occupations." Id. at 585, 707 A.2d 1061. Thus, we noted that comparing the septic tank cleaning business "with that of a carpenter or electrician is unsound [because] most carpenters and electricians would not ordinarily be driving large trucks in and out of the premises on a regular basis." Ibid. We stated:
These sensitive activities and potential health and general welfare concerns are hardly subordinate and minor in significance, nor do they bear a reasonable relationship with [the] residence. They distinguish [the] enterprise from the dispatching of a truck from a residence for the purpose of off-site electrical repair or carpentry work.
[Id. at 586, 707 A.2d 1061 (internal quotation marks and citation omitted).]
We conclude that Adams is inapposite because, there, the court considered an ordinance that treated home occupations as "conditional accessory uses," which the ordinance defined as "`customarily incidental and subordinate to the principal use.'" Id. at 583-84, 707 A.2d 1061. The ordinance further stated that a "home occupation" was an occupation or profession "`clearly incidental'" to the main residential use. Ibid.
Here, in contrast, Lebanon Township's ordinance language is expansive. Lebanon Township provides, for example, that a home occupation can include a 2,000 sq. ft. accessory structure, two commercial vehicles, onsite storage of hazardous materials, and two nonresident employees.[4]
*683 Judge Buchsbaum's analysis is pertinent and incisive:
[T]he Board could have found, and this [c]ourt agrees, that the primacy of the residence was established by its being the original use of the site, while the comparative insignificance of the garage was demonstrated by its having obtained a permit before 1998 as an accessory structure. Additionally, the home was occupied full-time by four people, in this case the Edwards' and their two children, who were living there permanently and using other parts of the property, as they did so. Under these circumstances, it was not irrational for the Board to conclude, in reviewing the disputed testimony, that the bulk of the site is indeed devoted to residential use and that the 9,000 square feet allocated to the business use must be understood in the context of the residential use of the great bulk of the property.
Moreover, this [c]ourt finds, even as a de novo matter, that such an interpretation is rational given the facts as to the area covered by the use. Nothing in the ordinance, which allows 2,000 square foot accessory uses, suggests that houses must be larger than the 2,000 square feet or that use of the properly permitted garage somehow converts the property into a business in such a situation. It is more rational for the Board and this [c]ourt to interpret the ordinance as requiring that the use as a whole be incidental.
In this case, it was ultimately appropriate for the Board to have found, and this [c]ourt to agree, in accordance with... Adams, [supra, 309 N.J.Super. at 586, 707 A.2d 1061,] that the fundamentals of the use more closely resembled the going and coming of trucks to a residence for the purpose of off site work, i.e., that the welding work done on site was essentially no different than what the carpenter or electrical repairman... might do in their garage while conducting the bulk of the activities off site. To that end, there was testimony that 90% of the welding work occurs off site, and to the extent that the employees were on site, they were doing work around the Edwards' house rather than welding work.
Further, the oil tanks and compressed gas canisters do not resemble the two 3,000 gallon storage trucks recounted in Adams, [id.] at 585 [707 A.2d 1061]. It is undisputed that the gases were not classified as hazardous substances by NJDEP in contrast with the septic waste in Adams, which was regulated by it. Likewise, tanks include one very ordinary 300 gallon tank for motor fuel, a second tank which contains normal # 2 heating oil, and a third tank which was emptied perhaps once a year or less according to the testimony.... None of these items are so unusual on a 6.44 acre lot as to be inconsistent with the primary residential use of the property.
In light of these distinctive factors, the judge concluded that the Board reasonably treated the Edwards' welding business as a permissible home occupation:
Based on the above, the [c]ourt finds that the Board reasonably resolved disputed facts in determining that the use was not a nuisance or unduly beyond the proper interpretation of the ordinance understood as having been liberalized to accommodate diversity in the Township. Further, to the extent the facts are undisputed, such as with the gas tanks, or the truck and the backhoe use *684 for private non-business purposes, or the area of business activity, the [c]ourt finds de novo that they did not turn this home occupation into a primary or principal use as a business.
Finally, the [c]ourt is constrained to look [at] the use [as] proposed rather than as it may have existed in the past. Thus, although the Edwards may have received steel on site, done drive-in work, advertised for a welding business[,] and burned wood on site in the past, they did not propose such use here. Also while Off Road [Welding], Inc. worked outside previously, the record demonstrates that its proposed use of the property likewise no longer contains these features, or use of the 175 ton press brake,... and that they should be discounted in evaluating the nature of the use at issue. Cf. Children's Inst[.] v. Verona Twp. Bd. of Adj., 290 N.J.Super. 350 [675 A.2d 1151] (App.Div. 1996), looking at the reality of what was proposed in granting a variance.
For all the foregoing reasons, the [c]ourt must affirm the Board's finding, that what Off Road [Welding, Inc.] proposed was a qualified home occupation which did not create a nuisance or significantly impact surrounding properties.
[Columbro v. Lebanon Twp. Zoning Bd. of Adjustment, supra, slip op. at 30-34 (footnote omitted).]
We adopt these observations in their entirety.

V.
Next, we reject plaintiffs' argument that the Board's grant of a conditional use variance to the Edwards was arbitrary or capricious, and that the Edwards did not properly support their variance application. In light of the Board's extensive findings of fact, plaintiffs' argument is unconvincing. We agree with Judge Buchsbaum's analysis of the variance issues:
In this case, it is clear that the Board could rationally find use of the extant 2,150 square foot building to be an appropriate subject for a variance. The excess in size is minimal. It is also not likely to engender a highly increased amount of activity, which is presumably the reason for the 2,000 square foot limit. In fact, in this case, it appears that some of the space might be used for relatively low intensity office purposes.
Moreover, it is caused by a peculiar circumstance of chance, namely that the building was permitted and built before the 2,000 square foot limit went into effect. Thus, the applicant was faced with a unique pre-existing situation over which it had no control. It was thrust into a physical happenstance. In fact, the case of such a slightly oversized building could not have been reasonably anticipated by the governing body when it adopted an ordinance covering the entire township.
Thus, the grant of the variance here is easily reconcilable with the decision to limit the size of accessory uses.... Further, it was not arbitrary for the Board to find that the additional 150 feet would not cause a significant impact on neighboring properties.... There is no indication that the building itself has ever caused any difficulty by virtue of the extra 150 square feet.
Nor in the context of the 6.44 acre property, even if it is currently non-conforming, did the extra 150 square feet constitute a significant impairment to the zone plan. When the governing body adopted the ordinance, it had to pick some figure and chose one that was slightly below the situation here. There is no indication whatsoever that this slight modification of that number to *685 allow use of the existing building would interfere with the governing body's aims in actually liberalizing the ordinance in several respects. While the situation might be different for a new building, here there is thus simply no reason to require partial destruction or non-use of an only slightly larger lawfully constructed building. Accordingly, the [c]ourt finds no basis for overruling the variance to allow the use to be conducted in the garage. The Board rationally found that this de minimus variance could be granted to address an existing fact, without contravening the purposes of the permission given to home occupations, or allowing any impact on the zone plan. Nor does the size of the building impact the public good.
[Id. at 38-40(emphasis in original).]
Further, plaintiffs fail to show how the Board "ignored all the nuisance elements" and "improperly shifted" the burden to plaintiffs to establish that a nuisance existed. The court specifically found that the "more scientific measurements of noise by the Edwards' experts, and the testimony of Mr. Edwards himself denied any such nuisance." Id. at 26. As Judge Buchsbaum observed:
Further weakening plaintiffs' testimony is the vagueness of the time periods involved. It was never made clear why Mrs. Columbro never had complained until two years ago, if things had been so terrible from 2001 when she moved in as she claimed. The Board could find that her testimony about extreme impacts was simply unpersuasive and less credible th[a]n the testimony of Edwards, [Board planner Michael] Bolan and Chmielik. Further, the Board could credit Edwards' statement that there would be no more than one truck on site even though 3 are permitted in ¶ 3 of the ordinance conditions, and that the comments about truck movement were either exaggerated or related to past conditions. It could also find that the single truck to which defendants testified constitutes a meaningful limitation on the home occupation activities, even beyond the ordinance's mandate which would allow the trucks.
....
[T]he Board members could also credit their own observations of the site as to nuisance and impacts. The Board members made a record on this subject without objection. They could also credit their own observation of the parties which they saw, but this [c]ourt did not. To be sure, the Board may not have specifically commented on the witnesses' demeanor, or manner of presentation, or reference to questions. Nonetheless, a review of the Resolution's conclusions leads this [c]ourt ineluctably to conclude that the board members evaluated the force of the witnesses' testimony, as well as the other evidence, and simply were not convinced by Karen Columbro's description of events. The [c]ourt has no basis in this case for rejecting that determination.
Under these circumstances, the [c]ourt finds that the Board rationally could have chosen the testimony of its own planner, defendants' expert, the Edwards defendants, and the observations of the Board members themselves over the testimony of the plaintiffs. Further, it could find that plaintiff Columbro's description of the conditions on site, which she claimed had existed since 2001, did not necessarily square with her claim that it had been an intolerable situation existing all those years. Further, her factual presentation ... did to some extent acknowledge that conditions had ameliorated recently. Under those circumstances and all the other testimony, *686 it was in the Board's province to find that no nuisance or significant external impacts existed by reason of noises, odors or excessive trucking on the site.
[Id. at 27-30.]
Having carefully considered plaintiffs' arguments, we affirm the dismissal of their prerogative writs action substantially for the reasons stated in Judge Buchsbaum's thorough and well-written opinion.
Affirmed.
NOTES
[1] The application was filed for variance relief from two of the ten applicable standards, namely Ordinance 400-11B(6)(a)(1) (all activities to be conducted inside), and Ordinance 400-11B(6)(a)(4) (no more than two nonresident employees). During the course of the hearings, however, Ordinance 400-11B(6)(a)(2) was amended to restrict the gross floor area of buildings devoted to accessory use so as not to exceed 2,000 sq. ft.
[2] Judge Buchsbaum's written opinion adequately summarizes the findings of the Board as memorialized in its May 26, 2010 resolution. Columbro v. Lebanon Twp. Zoning Bd. of Adjustment, supra, slip op. at 10-20.
[3] Defendants do not cross-appeal from this part of the order.
[4] Plaintiffs also allude to Schofield v. Zoning Board of Adjustment, 169 N.J.Super. 150, 154, 404 A.2d 357 (App.Div. 1979), which reversed a zoning board's determination that a child daycare center constituted a home occupation. There, we stated that the board had "ignored the plain language of the definition [of `home occupation'] requiring not only that the occupation be one customarily carried on in a dwelling unit but that it be `clearly incidental... to the use of the main building for residential purposes.'" Id. at 154-55, 404 A.2d 357 (alteration in original). We also noted that the township had amended its ordinance "to define a home occupation much more restrictively, specifically allowing only one person not a resident to be employed therein and only 450 square feet to be used for the purpose." Id. at 153, 404 A.2d 357. Given the differences between the ordinance in Schofield and the ordinance in this case, Schofield, like Adams, is inapposite.