967 A.2d 929 (2009)
406 N.J. Super. 384
ROCKY HILL CITIZENS FOR RESPONSIBLE GROWTH, an unincorporated association; Susan Bristol, Jane Oakley, Constance Greiff, Joan Eckstein, Caron Wendell, Amy Gottschalk, John Frank and Corrine March, individually and as members of Rocky Hill Citizens for Responsible Growth, Plaintiffs-Appellants,
v.
PLANNING BOARD OF the BOROUGH OF ROCKY HILL; Mayor and Council of the Borough of Rocky Hill, Pulte Homes of New Jersey, a Limited Partnership; Schafer Capital Management and David Schafer, Defendants-Respondents.
DOCKET NO. A-1595-07T1.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 2008.
Decided April 8, 2009.
*931 Walter R. Bliss, Jr., Princeton Junction, argued the cause for appellants.
Donald R. Daines, Princetin, argued the cause for respondents Pulte Homes of New Jersey, Schafer Capital Management and David Schafer (Hill Wallack, attorneys; Henry T. Chou, on the brief).
Valerie J. Kimson, Bedminster, for respondent Planning Board of the Borough of Rocky Hill, joins in the brief of respondents Pulte Homes of New Jersey, Schafer Capital Management and David Schafer.
DiFrancesco, Bateman, Coley, Yospin, Kunzman, Davis & Lehrer, Warren, for respondents Mayor and Council of the Borough of Rocky Hill, join in the brief of respondents Pulte Homes of New Jersey, Schafer Capital Management and David Schafer.
Before Judges CARCHMAN, R.B. COLEMAN and SIMONELLI.
*932 The opinion of the court was delivered by
CARCHMAN, P.J.A.D.
The Borough of Rocky Hill, a small Somerset County municipality established in the 19th Century, consisting of 600 residents and approximately 250 homes, incorporates within its geographic borders, a Historic Preservation District (the District or HPD) that encompasses the critical core of the municipality and "defines the community." To secure its historical and architectural heritage, defendants Mayor and Council of the Borough of Rocky Hill (Borough or Council) adopted a Development Regulations Ordinance (DRO). The DRO incorporated general criteria for new construction within the District.
In 2003 and 2004, defendant Rocky Hill Planning Board (Planning Board or the Board) considered the rezoning of certain areas of the Borough consistent with the then existing master plan. Included within the considered rezoning was a fifteen-acre tract of land owned by defendant David Schafer. The proposed zoning reduced the density of the Schafer tract prompting a challenge to the plan and resulting in a settlement with Schafer (settlement agreement). The settlement ultimately resulted in a zoning and master plan change creating an age-restricted residential zone that would permit an increase in density from twenty-eight units to thirty-four units in seventeen duplex buildings.
The adoption of the ordinance and master plan did not go unnoticed by the residents of the municipality. In fact, the consideration of the settlement, ordinance and master plan prompted numerous public hearings and discussions, resulting in the adoption of, and a notice of adoption of the ordinance published on December 31, 2004.
As expected, a development application soon followed in May 2005, and after extended consideration including at least six public hearings, the planning board approved the application, finally memorializing its approval in a September 12, 2006 resolution. In response to the approval, a lawsuit followed challenging not only the approvals but the underlying ordinance that established standards for the newly created zone.
Following a motion for summary judgment addressing the timeliness of the action and a later bench trial on the merits of the zoning application, Judge Accurso, in the Law Division, concluded that: 1) the challenge to the validity of the ordinance was not timely; and 2) the Planning Board's approval of the project was proper. We now affirm.

I.
While we have provided a brief summary of the facts, we consider it appropriate to provide a more expansive discussion of the relevant facts to place the issues in proper context. In March 2004, the Planning Board presented to the Borough a proposed ordinance that rezoned portions of the Borough consistent with the master plan then in effect. One of the properties to be rezoned was a fifteen-acre tract owned by Schafer. Schafer filed an objection to the proposed rezoning, and in November 2004, Schafer and the Borough entered into a settlement agreement. Pursuant to the settlement agreement, the Mayor and Council amended the proposed ordinance. The amended ordinance (the ordinance or Section 704) removed Schafer's property from the R-1A zoning district, and placed it in a newly created R-1C zone, which was entitled "Age Restricted/Traditional Neighborhood Development." The ordinance also allowed for thirty-four residential units, comprised of *933 seventeen duplexes, to be built on Schafer's property. At least one resident of the proposed development had to be fifty-five years of age or older, and no residents were permitted if below eighteen years of age. On November 15, 2004, the Council approved the settlement agreement.
On December 14, 2004, the Planning Board held a public meeting and considered the ordinance, as well as several amendments to the master plan. The Planning Board approved the amendments to the master plan and voted to recommend approval of the ordinance. On December 20, 2004, following a public hearing, the Mayor and Council adopted the ordinance. On December 31, 2004, notice of the ordinance's adoption was published, and it was codified at Section 704 of the DRO.[1]
On May 19, 2005, defendant Pulte Homes of New Jersey (Pulte) filed an application for preliminary and final subdivision approval and an application for historical preservation plan approval for the age-restricted development (the application). The Planning Board conducted six public hearings on January 19, February 23, March 30, April 20, May 11 and June 29, 2006, regarding this application. At these hearings, Pulte presented testimony from the site engineer, an architect, a traffic engineer, a licensed blaster, a representative of Pulte and a landscape architect. The Planning Board presented testimony and reports from its own professionals, consisting of a site engineer, two architects, a planner and a historical preservation consultant. Pulte's professionals addressed the various reports prepared by the Planning Board's professionals and answered questions from the Planning Board, its professionals and members of the public.
At the conclusion of the June 29, 2006 meeting, the Planning Board voted against approving the application without discussion. Thereafter, the Planning Board voted to reopen the meeting for further discussion. Because one of the issues raised on appeal addresses concerns about the Board's public deliberations, we briefly describe the substance of the discussion.
Thomas Roshetar, a member of the Planning Board, expressed concerns over the size of the proposed buildings in the application. Roshetar did not believe that these buildings respected the general scale and proportion of the homes in the District, and he urged the Planning Board not to approve the application.
Mayor George Morren stated that he did not disagree with Roshetar; however, he was mindful of the potential of litigation in this case. Additionally, Mayor Morren believed that the residential examples that the architect brought forth reflected recent actions by the Planning Board that, at the time, were considered controversial. Mayor Morren opined that these actions would be a part of the record if there was any litigation, and, therefore, urged approval of the application.
Andrew Youtz, another member, opined that the Planning Board faced a "bit of a paradox" because the ordinance states two standards, one subjective and one objective. Youtz considered that requiring the massing to be "consistent with the historic homes" was a subjective standard, and that the "fixed square-footage number in the ordinance" was an objective standard. Youtz expressed that he did not see how the Planning Board could go by any standard other than the "hard number" found in the square footage requirement. He urged approval of the application because it met this requirement.
*934 Cathy Cann was the next Planning Board member to speak. She stated that although the developer had the right to build homes that were 3,500 square feet, she did not feel that the developer was required to do so. Cann also found it disturbing that members of the Planning Board were considering potential litigation when voting. Robert Ayrey followed Cann. Ayrey noted that he did not have a problem with new construction, he just felt that the homes in the application were too big.
Richard Batchelder spoke next. Batchelder discussed the process surrounding the adoption of the ordinance and stated that the applicants agreed to many compromises throughout this entire process. Batchelder also noted the tax benefits the Borough would receive from having all these new residences without school-age children. Julia Hasser followed Batchelder and declared that her recommendation was the same as his. Hasser also focused on the compromises and observed that the application met the square footage requirements of the ordinance. Finally, Planning Board Chair Charles Pihokken spoke.[2] Pihokken stated that he felt the Planning Board was bound to the prior agreement it made with Schafer and that his vote was consistent with his understanding of this agreement. At this point the Planning Board voted to approve the application, six to three. The Planning Board memorialized this approval in a September 12, 2006 resolution (the resolution).
Several members of the public raised questions regarding whether the application complied with the Borough's Historic Preservation ordinance, found at Section 713 of the DRO (Section 713).[3] Section 713 governs the issuance of preservation permits as well as providing requirements for new construction within the District. In response to these inquiries, the Planning Board reviewed the requirements found in Section 704, specifically, Section 704F(8) which states:
Within the development variations in architectural style are encouraged. Buildings and fences shall be designed to be compatible with the architecture and landscape within the [District]. A development meeting the following standards and the standards set forth in Section 704F(6) and (7) shall be deemed to comply with the [District] requirements set forth in Section 713.

[(Emphasis added).]
This section (the deemer clause) then set forth sixteen subsections which comprise various design standards. The Planning Board found that the use of "shall" in Section 704F(8) indicated an intent to require the Planning Board to review whether applications in the R-1C zone comply with Sections 704F(6)-(8). The Planning Board also determined that once it finds an application does comply with these sections, it is required to "deem the application in compliance with the District requirements set forth in Section 713," and additional review under Section 713 is not required.
The Planning Board also reviewed the history surrounding the adoption of Section 704 and the R-1C zone, including the settlement agreement. The Planning Board found that the units submitted in the application were substantially similar in "bulk and design" to the architectural renderings attached to the settlement agreement and were consistent with Section 704. Additionally, the Planning Board's professionals opined that the application *935 did not require a variance from the standards of Section 704.
In determining the appropriate height and bulk standards to apply, the Planning Board stated that Section 704E(3) provided more guidance than Section 704F(8)(i). Section 704F(8)(i) requires that, "[a]ll massing, building and roof forms respect the general scale and proportions of the historic homes of the Borough of Rocky Hill." The Planning Board found that "`respect' is a subjective word without defined standards," and that the actual height and bulk standards are specified in Section 704E(3). Additionally, the Planning Board found that the application met all the bulk requirements of Section 704E(3), and while the proposed buildings were larger than most existing buildings in the Borough, that could not per se "be deemed a lack of respect for the Borough's historic character."
The Planning Board considered testimony from the applicants' architect regarding the sizes and widths of other buildings within the Borough. The Planning Board found that some of the buildings the architect used for his comparisons were commercial rather than residential and that the scale he used for his proposed development elevations was slightly miscalculated. However, the Planning Board determined that given the mix of scale and mass amongst the existing structures, the proposed buildings were "compatible with the architecture and landscape within the [District]." The Planning Board found that the application met the criteria set forth in Section 704F(8), stating that the massing, building and roof forms "respect the general scale and proportions" of the historic homes in the Borough and were compatible with the specified bulk standards of the section.
The Planning Board took notice of the various comments made by members of the public, which demonstrated their concern over the size of the proposed homes. The Planning Board also took notice of the specific testimony of two members of the public, plaintiffs Susan Bristol and Constance Greiff, as well as the exhibits they provided.
The Planning Board acknowledged that the applicants provided architectural and landscaping testimony regarding the proposed homes. Based on these proffers, it found that "the units have open porches, building offsets, and changes in roof form and elevation." The Planning Board determined that the applicants provided adequate proofs to ensure that there would be a diversity in the streetscape. Further, the proposed residential units complied with the "comprehensive development, density, bulk, yard and parking regulations set forth in ordinance Section [704E]," and that the application met the criteria of Section 704F(7).
The Planning Board stated that the application clustered the units "around a village green," encouraged the use of shared driveways and "utilized rear lanes to reduce the number of curb cuts and visibility of driveways and garages." It found that the application was "compatible with the street grid and block arrangement of the village center and [the District]," and met the criteria set forth in Section 704F(6).
Additionally, the Planning Board concluded that the application met the requirements of Sections 704F(3) and 704F(6)(vi). The development contained in the application met the very specific building height, building coverage, lot coverage, and square foot per dwelling requirements set forth in 704F(3). Finally, the Planning Board concluded that the application met all the bulk requirements of the R-1C *936 zone,[4] and that it satisfied the criteria set forth in Sections 704F(6), (7) and (8). Based on these extensive findings, the Planning Board granted the applicants preliminary and final major subdivision approval and historic preservation plan approval.
On October 27, 2006, plaintiffs Rocky Hill Citizens for Responsible Growth[5] joined by Susan Bristol, Jane Oakley, Constance Greiff, Joan Eckstein, Caron Wendell, Amy Gottschalk, John Frank and Corrine March (collectively plaintiffs) filed an action in lieu of prerogative writs: 1) challenging the validity of the Planning Board's grant of the application of Pulte Homes, Schafer and Schafer Capital, (collectively defendants), for preliminary and final subdivision approval and historic preservation plan approval; and 2) challenging the validity of Section 704 of the DRO.
After a motion by defendants for summary judgment to dismiss those counts challenging the validity of Section 704, Judge Accurso granted the motion finding that plaintiffs' challenge was untimely under the forty-five day ordinance limitation provisions of Rule 4:69-6. The judge held that the limited public interest did not warrant enlarging the forty-five day period.
Thereafter, following a bench trial, Judge Accurso found in favor of defendants. Among other things, she concluded that there is a presumption of validity in favor of the Planning Board and that the record did not indicate that the Planning Board's findings were arbitrary or capricious. This appeal followed.
On appeal, plaintiffs assert that: the judge erred in determining that their complaint was time-barred under Rule 4:69-6(c); the judge erred in finding that the Planning Board's actions were not arbitrary and capricious; the judge erred in concluding that the Planning Board's interpretation of Section 704 was proper; and the Planning Board failed to make sufficient findings in its resolution. We address the issues seriatim.

II.
The limitations of actions to challenge governmental action is governed by Rule 4:69-6 which provides:
(a) General Limitation. No action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing, or relief claimed, except as provided by paragraph (b) of this rule.
(b) Particular Actions. No action in lieu of prerogative writs shall be commenced
....
(3) to review a determination of a planning board or board of adjustment, or a resolution by the governing body or board of public works of a municipality approving or disapproving a recommendation made by the planning board or board of adjustment, after 45 days from the publication of a notice once in the official newspaper of the municipality or a newspaper of general circulation in the municipality.
....
(c) Enlargement. The court may enlarge the period of time provided in paragraph (a) or (b) of this rule where it *937 is manifest that the interest of justice so requires.
By its terms, such action must be filed within forty-five days of the challenged action; however, there are exceptions to the rule that permit a judge to enlarge the period when the interests of justice so require. R. 4:69-6(c).
The Supreme Court has construed Rule 4:69-6(c) to allow enlargement in cases, which involve: "(1) important and novel constitutional questions; (2) informal or ex parte determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification." Horsnall v. Washington Twp. Fire Div., 405 N.J.Super. 304, 312-13, 964 A.2d 341 (App.Div.2009) (quoting Brunetti v. Borough of New Milford, 68 N.J. 576, 586, 350 A.2d 19 (1975)). When dealing with public interests, one must balance those interests with the "important policy of repose expressed in the forty-five day rule." Id. at 313, 964 A.2d 341 (quoting Reilly v. Brice, 109 N.J. 555, 559, 538 A.2d 362 (1988)). As mentioned supra, this "statute of limitations is designed to encourage parties not to rest on their rights." Ibid. However, as plaintiffs note, there have been cases where courts have enlarged the forty-five day requirement. See Concerned Citizens v. Mayor and Council of Princeton Borough, 370 N.J.Super. 429, 447, 851 A.2d 685 (App. Div.), certif. denied, 182 N.J. 139, 861 A.2d 844 (2004); Willoughby v. Planning Board of Twp. of Deptford, 306 N.J.Super. 266, 277, 703 A.2d 668 (App.Div.1997). See also, Horsnall, supra, 405 N.J.Super. at 314, 964 A.2d 341.
Plaintiffs argue that the judge did not reasonably assess the public interest implications of their challenge and that these interests will not be addressed if summary judgment is granted. They assert that since proposed construction on properties in the District must be visually compatible with the existing structures and landscape, the units in the application will change the measures of compatibility going forward. Plaintiffs submit that the motion judge rejected this argument because of the limited record on summary judgment, and that a review of the full record shows that the size, scale and arrangement of the units in the application were vastly different from other structures in the District. Plaintiffs contend this would undermine the "efficacy" of the District. Plaintiffs opine that the gravity of the public interest is evidenced by the diversity amongst the individual plaintiffs, the number of public meetings surrounding the application, the turnout at those meetings, the number of individuals who have made monetary contributions to support this lawsuit, and the number of units in the application, representing a significant percentage of the Borough's housing stock. Plaintiffs conclude that this lawsuit is the only opportunity to decide such an important public interest.
Defendants counter that the motion judge was correct in determining that plaintiffs' complaint was not timely, and that the time for filing should not be enlarged in this case. Defendants argue that the judge properly determined that the potential threat to the "historic" nature of the District was not enough to justify enlargement. Defendants contend that plaintiffs' claims actually revolve around their own subjective displeasure with the size, scale and footprints of the units allowed under the ordinance. Defendants maintain that Judge Accurso correctly distinguished this case from Willoughby, supra, 306 N.J.Super. at 266, 703 A.2d 668, and Concerned Citizens, supra, 370 N.J.Super. at 429, 851 A.2d 685, two cases relied upon by plaintiffs. Defendants submit *938 that further evidence that this case only involves private interests is the fact that there are only eight plaintiffs, five who live within 200 feet of the development and three who live within walking distance.
Concerned Citizens involved a challenge to a redevelopment designation, which was brought less than a year after accrual. In support of enlargement, we pointed to the plaintiffs' allegations of "numerous violations and misapplication" of the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 to -73, "as well as arbitrary and capricious municipal action in the redevelopment designation of public lands." Concerned Citizens, supra, 370 N.J.Super. at 447, 851 A.2d 685. We observed that the designation would also require the expenditure of public funds through the issuance of bonds. Ibid. Finally, although we noted that the plaintiffs demonstrated a strong public interest by submitting a significant number of signatures opposing the project, ibid., that factor was seriously called into question by our concurring colleague. Id. at 473, 851 A.2d 685 ("I would not equate mere numerosity with `important public rather than private interests that require adjudication.'") (Hoens, J.A.D., concurring). We, too, question whether the number of plaintiffs in a lawsuit or signatures on a petition should impact on the true nature of defining "public interest."
Willoughby, likewise, involved a challenge to an ordinance brought within a year after it was adopted. The ordinance rezoned a particular property owned by Wolfson Group, Inc. from "Office Campus" to "Town Center." Willoughby, supra, 306 N.J.Super. at 271, 703 A.2d 668. The ordinance prompted the plaintiffs to mount a political campaign resulting in the incumbents being turned out of office. Wolfson submitted an application for site plan approval to the town's planning board. Eventually, the town council adopted an ordinance returning the zoning to Office Campus; however, Wolfson's site plan was approved by the planning board, and the plaintiffs then brought suit challenging site plan approval and the repealed zoning ordinance, which allowed for this site plan. The trial judge refused to enlarge the forty-five day limitation period and dismissed the complaint.
We reversed and determined that development of the property in accordance with the zoning change would have a significant impact on the residents of the adjoining neighborhood and would impact the flow of traffic on a major thoroughfare; moreover, the public would lose access to nature trails due to the rezoning. Additionally, we observed that the claimed benefits of "increased shopping facilities, employment opportunities and tax ratables" as a result of the rezoning were all matters of public interest. Id. at 277, 703 A.2d 668. We also noted that the political campaign and municipal election results were both evidence of the public's interest in this matter. Ibid. Finally, we concluded that "[u]nder these circumstances, there [was] no basis for concluding that Wolfson justifiably relied upon plaintiffs' failure to file suit within forty-five days or that Wolfson's interest in repose outweighs the public interest in a decision on the merits of plaintiffs' claims." Id. at 278-79, 703 A.2d 668.
We have also sanctioned expansion of the forty-five day limitation where the issue was a "blight designation" and we questioned the constitutional adequacy of the notice to property owners. Harrison Redevelopment Agency v. DeRose, 398 N.J.Super. 361, 418, 942 A.2d 59 (App.Div. 2008). We also affirmed a short expansion of the limitation period where the statutory tenure rights of firemen was at issue. *939 Horsnall, supra, 405 N.J.Super. at 314, 964 A.2d 341.
This case is distinguishable from Concerned Citizens, Willoughby, DeRose and Horsnall. None of the factors present in those cases are apparent here. There are no public funds involved, no political upheavals, no significant impact on density, traffic, ratables or any interest other than the concerns expressed by the individual plaintiffs and their supporters and no constitutional implications. Plaintiffs' primary argument is that the ordinance will undermine the "efficacy" of the District and that permissible scale, size, mass and arrangement of future construction in the District will be affected. While certainly the ordinance is of interest to this limited public, this is not the public interest envisioned by the Court in permitting limited expansion of the rule. The cited cases, Concerned Citizens, Willoughby, DeRose and Horsnall, must represent the exception rather than the rule.
Plaintiffs argue that they did not "sleep" on their rights. Plaintiffs admit that Bristol was on the Planning Board when the ordinance was adopted and that she was critical of the ordinance even then. Plaintiffs argue that Bristol, along with other members of the Planning Board, believed that any proposed development under the ordinance, would also have to meet historic preservation review. Plaintiffs assert that there was no way of knowing how the Planning Board would interpret and apply the ordinance until the hearings surrounding the application in 2006, and there were too many unknowns surrounding the ordinance to recommend litigation.
Plaintiffs rely on Adams v. DelMonte, 309 N.J.Super. 572, 581, 707 A.2d 1061 (App.Div.1998), where we permitted enlargement when the full aspect of the defendant's enterprise "did not become apparent until the subsequent Planning Board hearing was conducted." Plaintiffs contend that the full extent of the applicants' "enterprise" was not known until the hearings.
Adams is not relevant here. Adams involved a challenge to a zoning board ruling where the board based its determination on information that later turned out to be false and concluded that the objectors' concerns would be more properly addressed by the planning board. Under the facts presented, we concluded that enlargement was proper. Id. at 582, 707 A.2d 1061. There was no deception here; the ordinance was the subject of intense debate at all times.
Public consideration of this ordinance was extensive. Numerous public hearings were held and participation was substantial. The time to challenge the ordinance was within the prescribed limitation period. The suggestion that there was no reason to move forward to challenge the ordinance because of a lack of understanding as to the Planning Board's interpretation of the ordinance is unavailing. The concerns about the interaction of Sections 704 and 713 were known and articulated. In essence, plaintiffs adopted a "wait and see" attitude that does not foreclose them from attacking the bona fides of the application, but should not form the basis for seeking the extraordinary relief of an extension to allow an attack on the bona fides of the ordinance.
The judge found plaintiffs, especially plaintiff Bristol, to be sophisticated and significant costs were assumed by the developer and the Borough. Given the failure to make a timely challenge, and a nearly two year delay, the Borough also lost the opportunity to timely address and make changes to the ordinance.
We cannot accept a "wait and see" strategy as a basis for granting relief from the *940 limitations rule. All ordinances, at some point, will be subject to the interpretation of the appropriate agency. To suggest that the right to challenge should accrue when the interpretation is contrary to one's view subordinates the public interest in repose to the private interests of the objectors. That is what is suggested here, and it is unacceptable as an appropriate outcome. This ordinance emerged from a cauldron of debate and review. Plaintiffs' view of the merits did not change over the almost two years since the ordinance was adopted. Judge Accurso correctly denied the enlargement of time.[6]

III.
Notwithstanding her conclusion that the challenge to the ordinance was untimely, the judge did consider and reject plaintiffs' challenge to the deemer provision.
Count Four of plaintiffs' complaint asserted that the deemer clause was ultra vires "because it invaded upon the jurisdiction of the Planning Board and preempt[ed] its statutory responsibility in determining compliance with the requirements of the [District]." Judge Accurso disagreed and in doing so, she distinguished Avalon Home & Land Owners Ass'n v. Bor. of Avalon, 111 N.J. 205, 543 A.2d 950 (1988); Nickels v. City of Wildwood, 140 N.J. 261, 658 A.2d 291 (1995); and Cronin v. Twp. Comm. of Chesterfield Twp., 239 N.J.Super. 611, 571 A.2d 1354 (App.Div.1990). She concluded that the cases did not apply here because they all involved a township committee or council "stripping generally a zoning board of a particular zoning power."
In assessing the deemer clause, and considering N.J.S.A. 40:55D-110 and N.J.S.A. 40:55D-20, the judge did not find that this issue involved a significant public interest. Finally, Judge Accurso concluded:
I am moved by the argument that because this is a joint historic commission and zoning and planning board, that the planning board in this instance could not have been stripped of any significant power to review this application by the [d]eemer clause.
And, of course, when you get to [N.J.S.A. 40:]55D-110 to say  and even were there to be no referral at all, failure to refer the application as required shall not invalidate any hearing or proceeding.
The cases the plaintiff raises are generally stripping a board of zoning authority. I don't find them sufficiently analogous to arise to this level.
Plaintiffs argue that Judge Accurso's legal determinations in regards to the deemer clause were incorrect. Plaintiffs claim that the DRO gives the Planning Board exclusive power in determining whether proposed construction meets the regulations set forth for buildings located within the District. Plaintiffs contend that the deemer clause, Section 704F(8), substitutes the standards set forth in Section 704 for those of Section 713, and supersedes the authority of the Planning Board to determine whether the application complied with Section 713. They assert that this violates N.J.S.A. 40:55D-20, relying on Avalon, Nickels and Cronin as analogous cases supporting this argument. Plaintiffs claim that by distinguishing those cases from the present case, the motion judge did not address their argument. Additionally, while conceding that a failure to seek *941 the advice of the historic preservation commission does not invalidate the proceedings, plaintiffs contend that the Planning Board is required to apply Section 713 to applications in the District, and the deemer clause improperly removes this requirement. Finally, plaintiffs maintain that the Planning Board did not have the authority to cede its jurisdiction in applying the historic preservation regulations.
Defendants counter that the judge correctly determined that the deemer clause did not divest the Planning Board of its historic preservation review powers. Defendants maintain that since in Rocky Hill, the Planning Board also serves as the Borough's Historic Preservation Commission, it exercised its historic preservation review powers during the "pre-adoption planning process" of Section 704 in 2004 and the public hearings regarding the application during 2006. Defendants contend that the ordinance was properly introduced by the Mayor and Council and properly presented to the Planning Board to determine if they were consistent with the master plan pursuant to N.J.S.A. 40:55D-62. Defendants submit that the Planning Board also had the authority to amend the master plan so that the ordinance and master plan would be consistent, which it did, pursuant to N.J.S.A. 40:55D-28(a). Defendants argue that the Planning Board, in its dual capacity, reviewed the ordinance and had an opportunity to object to any aspect of it, including the deemer clause, but instead found that it was consistent with the amended master plan. Finally, defendants agree with Judge Accurso that a planning board's failure to refer an application to the historic preservation commission does not invalidate the Planning Board's actions; therefore, even if plaintiffs' claims are true, they "were of no consequence to the merits of the matter below."
The Municipal Land Use Law, N.J.S.A. 40:55D-1 to -163 (MLUL), provides in relevant part that "[a]ny power expressly authorized by this act to be exercised by (1) planning board ... shall not be exercised by any other body, except as otherwise provided in this act." N.J.S.A. 40:55D-20. "In a municipality having a population of 2,500 or less, the planning board, if so provided by ordinance, shall exercise, to the same extent and subject to the same restrictions, all of the powers of a[ ] historic preservation commission[.]" N.J.S.A. 40:55D-25(d). One of the powers of a planning board is the promulgation of a master plan. N.J.S.A. 40:55D-28. The planning board may adopt this master plan, and later amend it, so long as it first holds a public hearing. Ibid. A municipality's governing body may adopt a new or amend an old zoning ordinance; however:
[s]uch ordinance shall be adopted after the planning board has adopted the land use plan element and the housing plan element of a master plan, and all of the provisions of such zoning ordinance or any amendment or revision thereto shall either be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements[.]
[N.J.S.A. 40:55D-62.]
First, we agree that Nickels, supra, 140 N.J. at 267, 658 A.2d 291; Avalon, supra, 111 N.J. at 211-12, 543 A.2d 950 and Cronin, supra, 239 N.J.Super. at 616-17, 571 A.2d 1354, are distinguishable from the current case. In Avalon, the Court held an ordinance invalid that allowed the expansion of a nonconforming use because it directly contradicted "the Legislature's grant of authority to boards of adjustment to grant variances to permit expansion of nonconforming uses." Avalon, supra, 111 *942 N.J. at 212, 543 A.2d 950 (citing N.J.S.A. 40:55D-70(d)). Nickels held an ordinance invalid because it expanded a nonconforming use without declaring it a permitted use in contravention of Avalon. Nickels, supra, 140 N.J. at 266-67, 658 A.2d 291. Finally, in Cronin, we held that a soil removal permit was invalid because the governing body of the municipality determined soil removal was a valid nonconforming use in direct contradiction of N.J.S.A. 40:55D-68, which empowers the zoning boards of adjustment to make such determinations. Cronin, supra, 239 N.J.Super. at 617-18, 571 A.2d 1354. All of these cases reflect a municipality's governing body usurping power statutorily granted to the zoning board of adjustment. Here, the Mayor and Council presented an amendment to the master plan, pursuant to N.J.S.A. 40:55D-28, which the Planning Board approved. The Mayor and Council also presented an ordinance, pursuant to N.J.S.A. 40:55D-62, amending the zoning requirements encompassing Schafer's property, to the Planning Board. The Planning Board reviewed this ordinance and determined that it was in accordance with the master plan. The Borough has the power to amend zoning ordinances so long as the Planning Board finds it is compatible with the master plan. Under the ordinance, the Planning Board still must approve proposed construction and determine if it satisfies the criteria set forth in the historic preservation regulations. We agree with defendants that the specificity of Section 704, rather than being a "defect," is properly perceived as a "virtue" and provides appropriate and defined standards consistent with the powers entrusted to the Planning Board under the DRO.
We do not share plaintiffs' concern about the governing body legislating the outcome of the Planning Board's actions to avoid "mischief in the hands of the Board." The adoption of Section 704 was not achieved in a vacuum but with the substantial input from the Planning Board itself. In its critical role, it approved the deemer provision and it amended the master plan knowing full-well the impact and relationship of the ordinance, master plan and its role in the approval process. Most significantly, the Board performed and will continue in its dual role as Planning Board and Historical Preservation Commission.
We are satisfied that the Mayor and Council did not usurp the Board's authority by enacting Section 704. To the contrary, the Board's active participation in the promulgation of the ordinance and the development of standards to further the aims of the District in this unique municipality is a salutary reflection of the purposes and intent of the MLUL. The standards outlined in Section 704 provide the guidance and perspective necessary to meet the needs of the municipality. See Pizzo Mantin Group v. Randolph Twp., 137 N.J. 216, 230, 645 A.2d 89 (1994) (acknowledging that subdivision ordinances must be both flexible to allow discretion and "reasonably specific to provide guidance and to foster consistency and fairness in their application").
Plaintiffs next claim that the ordinance wrongfully exempts the Schafer property from the burden of regulations which are applicable to the other properties in the District, which amounts to impermissible "spot zoning." We disagree.
The motion judge defined spot zoning as "a rezoning of a lot or a parcel of land to benefit an owner for use incompatible with surrounding uses and not for the purpose or effect of furthering the comprehensive zoning plan." The judge found no spot zoning here, concluding that the case does not involve "the use of the zoning power to benefit a particular ... private *943 interest rather than collective interest of the community." She distinguished this case from Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 207 A.2d 522 (1965), and Cresskill v. Dumont, 15 N.J. 238, 104 A.2d 441 (1954), noting that the deemer clause did not "relieve the property owner from the burden of a general regulation." In fact, the judge determined that the requirements of Section 704 were actually more objectively specific than the requirements of Section 713.
Plaintiffs argue that the test for spot zoning is:
whether the zoning change in question is made with the purpose or effect of establishing or furthering a comprehensive zoning scheme calculated to achieve the statutory objectives or whether it is "designed merely to relieve the lot of the burden of the restriction of the general regulation by reason of conditions alleged to cause such regulation to bear with particular harshness upon it."
[Cresskill, supra, 15 N.J. at 249, 104 A.2d 441 (quoting Conlon v. Bd. of Pub. Works, 11 N.J. 363, 366, 94 A.2d 660 (1953)).]
Plaintiffs continue that the determining factor is the actual effect of the zoning change, as opposed to the subjective motive. Plaintiffs contend that the test is met in this case because the zoning change did not have the effect of furthering the comprehensive zoning scheme of the Borough, and it was designed to avoid the regulations of the District. Plaintiffs cite Trust Co. of N.J. v. Planning Bd. of Freehold, 244 N.J.Super. 553, 560-61, 582 A.2d 1295 (App.Div.1990), as an example where, although a "procedural" challenge to the ordinance was time-barred, the court could consider whether the ordinance constituted spot zoning. Additionally, plaintiffs assert that the ordinance creates special, less specific historic preservation regulations for Schafer's property which is not only spot zoning but a violation of N.J.S.A. 40:55D-62(a). Plaintiffs claim that regardless of whether the District should be considered an "overlay zone," as defendants claim, the historic preservation regulation needs to be uniform throughout the District. Plaintiffs state that Section 713 requires that all buildings be compatible as measured by size, scale, mass and arrangement of structure, whereas the ordinance does not mention those specifics, and only makes general statements regarding the buildings' compatibility with the current structures in the District.
Defendants counter that the standards of the ordinance are more specific and stricter than the standards of Section 713. They observe that the ordinance requires specific design standards, as well as standards for the "facades of buildings, cornices, fascia, frieze boards and moldings." Defendants claim that Section 713 uses broad general terms as a part of its requirements. Defendants cite to Section 415A of the DRO, which states that when provisions conflict, the one with stricter or higher standards controls, to show that, even without a deemer clause, the ordinance would govern. Additionally, defendants contend that the District is just an "overlay zone," and that the R-1C district is a separate district that overlaps with it. Defendants conclude that the ordinance complies with N.J.S.A. 40:55D-62 because all the standards are uniform within this district.
Judge Accurso properly defined spot zoning, and plaintiffs properly set forth the test for determining whether a change in zoning is spot zoning. See William M. Cox, New Jersey Zoning and Land Use Administration § 34-8.2 at 781 (Gann 2007); Cresskill, supra, 15 N.J. at 249, 104 A.2d 441. Plaintiffs were also correct in stating that the determinative factor is the *944 effect of the ordinance. See Palisades, supra, 44 N.J. at 135, 207 A.2d 522. We agree with Judge Accurso that the effect of the ordinance is not to allow the Schafer property to escape the requirements of Section 713.
Plaintiffs overstate the specificity of Section 713. The true object of Section 713 is visual compatibility. The section does not provide a guide to height, mass and size of buildings as plaintiffs contend. Section 713B(2) states that a preservation permit shall be granted so long as the structure proposed, "a. is not incongruous with the existing structures and streetscapes of the Historic Preservation District; and b. is visually compatible with the structures and places to which it is visually related, as judged by the following standards[.]" The section then provides such guidelines as height, the relationship between the width and the height of the front elevation of the structure, the relationship of the width to the height of the windows, the "relationship of entrance and porch projections to the street," the shape of the roof and the "size of the structure, the mass of the structure in relation to open spaces, and the windows, door openings, porches and balconies." See Section 713B(2)(b)(1)(11).
The ordinance also provides some general requirements, such as requiring that "[a]ll massing, building and roof forms respect the general scale and proportions of the historic homes of the Borough[,]" "[m]aterials, textures and colors are compatible with the homes in the historic district of the Borough" and "[e]ntrance and porch projections shall relate to the street and be visually compatible with related structures and spaces." Section 704F(8)(i), (v) and (xvi). However, at other points the ordinance does provide additional specificity, requiring buildings to have a "primary form or mass with secondary wings[,]" requiring garages and parking to be "located in the rear of the lot[,]" and requiring that shutters and the window openings match and that "single shutters are not used on multiple or ganged windows." Section 704F(8)(ii), (iii) and (x).
Plaintiffs argue that the regulatory process is designed to serve private interests for perceived "economic benefits." The judge carefully noted that the zoning and plan served the "collective interest of the municipality." Reasoned exceptions to size and scale of a development does not support an assertion that disagreement with those exceptions are designed to serve a private interest. That is what appears to be the case here. The judge correctly found no indicia of spot zoning.

IV.
Lastly, plaintiffs assert that the Board's determination was arbitrary, capricious and unreasonable. They particularly focus on the Board's consideration of the Historic Preservation criteria.
Our review of the Board's action is limited. We note that "a Board of Adjustment's exercise of its discretionary authority based on its factual determinations will not be overturned unless arbitrary, capricious or unreasonable[.]" Wilson v. Brick Twp. Zon. Bd., 405 N.J.Super. 189, 197, 963 A.2d 1208 (App. Div.2009) (citing Wyzykowski v. Rizas, 132 N.J. 509, 518-20, 626 A.2d 406 (1993)). See Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965). See also Riya Finnegan LLC v. Twp. Council of S. Brunswick, 197 N.J. 184, 198, 962 A.2d 484 (2008) (noting that "requiring the governing body to articulate its reasons for departing from the comprehensive plan envisioned in the master plan serves to prevent the municipality from acting in an arbitrary or capricious fashion"); Dowel Assocs. v. Harmony *945 Twp. Land Use Bd., 403 N.J.Super. 1, 29, 956 A.2d 349 (App.Div.) (quoting Fallone Props., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J.Super. 552, 560-62, 849 A.2d 1117 (App.Div.2004) (citing Burbridge v. Mine Hill Twp., 117 N.J. 376, 385, 568 A.2d 527 (1990) and Med. Ctr. v. Princeton Zoning Bd. of Adjustment, 343 N.J.Super. 177, 198, 778 A.2d 482 (App. Div.2001))) (noting "that when a reviewing court is considering an appeal from an action taken by a planning board, the standard employed is whether the grant or denial was arbitrary, capricious or unreasonable"), certif. denied, 197 N.J. 15, 960 A.2d 745 (2008). "The factual determinations of the planning board are presumed to be valid and the exercise of its discretionary authority based on such determinations will not be overturned unless arbitrary, capricious or unreasonable." Fallone, supra, 369 N.J.Super. at 560, 849 A.2d 1117 (citing Burbridge, supra, 117 N.J. at 385, 568 A.2d 527). "[T]he law presumes that boards of adjustment and municipal governing bodies will act fairly and with proper motives and for valid reasons." Id. at 560-61, 849 A.2d 1117 (quoting Kramer, supra, 45 N.J. at 296, 212 A.2d 153). The arbitrary and capricious standard is analogous to the substantial evidence standard. Cell South v. Zoning Bd. of Adj., 172 N.J. 75, 88-89, 796 A.2d 247 (2002). Our objective on review is to determine if the Board properly exercised its discretion, and we should not "substitute [our] judgment for that of the board's." Fallone, supra, 369 N.J.Super. at 561, 849 A.2d 1117 (citations omitted). However, it is "essential that the [planning] board's actions be grounded in evidence in the record." Id. at 562, 849 A.2d 1117. We must apply the same standard as the trial court. Ibid.
In her thoughtful and thorough opinion, Judge Accurso concluded that the Planning Board's findings were adequate and supported by the record. She carefully analyzed the proposed structures and found that the record supported the finding that the structures were compatible with the structures in the District. She made the noteworthy finding that when the Council created the R-1C district, it was not trying to replicate the town but was creating a unique yet comparable district.
Although plaintiffs claim that the Board "effectively ignored" the historic preservation criteria of the ordinance, the judge found this not to be the case.
The ordinance requires that all buildings "shall be designed to be compatible with the architecture and landscape within [the District]." Section 704F(8). It also provides that "[a]ll massing, building and roof forms respect the general scale and proportions of the historic homes of the Borough of Rocky Hill." Section 704F(8)(i).
Despite plaintiffs' claims to the contrary, the judge properly concluded that the Planning Board applied these standards. Plaintiffs cite three of the Planning Board's findings found in paragraphs 19 and 20 of the Resolution, claiming that in each instance, the Planning Board did not determine if the application met the standard found in the ordinance. Plaintiffs are incorrect. Paragraph 20 of the Resolution states:
The [Planning] Board finds that the proposed buildings are compatible with the architecture and landscape within the historic preservation district. The [Planning] Board also finds that the massing, building and roof forms respect the general scale and proportions of the historic homes of the Borough of Rocky Hill.... The Board finds that the proposed application meets the criteria *946 set forth in ordinance Section 704F(8).
[(Emphasis added).]
Not only did the Planning Board apply the appropriate standards of the ordinance while reviewing the application, but the record supports these findings.
The applicants proffered an architect at two separate meetings who opined as to the compatibility of these units to structures within the Borough. The Planning Board cited to this testimony in the Resolution. Our review does not suggest that we substitute our judgment for the Planning Board's or assess whether Bristol's or anyone else's testimony is more credible than the applicants' architect. Plaintiffs may disagree, but ultimately the issues of credibility and factual findings rest with the Board.
While we find the remaining issues raised by plaintiffs to be without merit, Rule 2:11-2(e)(1)(E), we offer the following brief comments.
We disagree that the references to the settlement agreement or the Planning Board members' personal knowledge unduly influenced the decision. The brief references to the settlement agreement with Schafer were part of the historical perspective involving this matter, and we agree with the judge's conclusion that the Board clearly understood that its role was controlled by the ordinance. The record demonstrates that in its deliberative process, the Board understood its role and the place of the ordinance in its ultimate conclusions.
We, likewise, give little credence to the argument that the individual Planning Board members' comments raised extraneous matters that invalidated their participation on this application.
The statements of individual Planning Board members, "represent informal verbalizations of the speaker's transitory thoughts, they cannot be equated to deliberative findings of fact. It is the Resolution, and not board members' deliberations, that provides the statutorily required findings of fact and conclusions." New York SMSA, L.P. v. Bd. of Adj. of Weehawken, 370 N.J.Super. 319, 334, 851 A.2d 110 (App.Div.2004) (citation omitted). It is immaterial if such statements include reasons other than the reasons given in the Resolution. See Hawrylo v. Bd. of Adj., 249 N.J.Super. 568, 575 n. 10, 592 A.2d 1236 (App.Div.1991) (rejecting plaintiff's contention that comments made prior to voting revealed that Board members used inappropriate criteria and invalidated the resolution).
We, likewise, reject the limited references to Exhibit D that was affixed to the settlement agreement and alluded to in the Resolution. Nothing in the record suggests that the Board relied on the rendition other than a recognition that it was there and that the approved dwellings bore similarity to the rendition. We also reject plaintiffs' belated concern that two members of the Board served on the Council at the time of the adoption of the ordinance. No application for recusal of these individuals was suggested at any time, and we cannot accept the premise that their prior service affected their judgment.
Finally, we reject, without more, plaintiffs' argument: 1) that the Planning Board's interpretation of Section 704 dismissed the historic preservation criteria in favor of the bulk standards in the ordinance, and 2) the trial judge erred in not finding that the Resolution failed to make legally sufficient findings of fact.
The Resolution more than adequately demonstrates that the Board considered both the bulk and the historic preservation criteria; moreover, the comprehensive *947 Resolution reflects well-supported findings of fact sufficient to sustain the Board's decision.
Affirmed.

APPENDIX A

704 AGE RESTRICTED/TRADITIONAL NEIGHBORHOOD DEVELOPMENT
 A. Purpose
 It is the purpose of this district to meet a need in the Borough of Rocky
 Hill and County of Somerset for senior housing by providing for an age
 restricted neighborhood adjacent to the Village Center. Development of
 this neighborhood should employ Traditional Neighborhood Development
 techniques to ensure that. it is compatible with the Village Center and
 consistent with the New Jersey State Development and Redevelopment
 Plan's policies for new development in areas adjacent to designated Village
 Centers. The visual corridor along Princeton Avenue shall be continued in
 a form of a greenbelt, consistent with the Land Use Plan element of the
 Master Plan.
 B. Principal Permitted Uses on Land and in Building
 1. A planned unit residential development consisting of two family side by
 side units meeting the standards as set forth in this Section 704 and age
 restricted to households where at least one (1) individual is fifty-five (55)
 years of age. Such a household shall not include any resident person
 who is below eighteen (18) years of age.
 2. General Farming.
 C. Accessory Uses Permitted
 1. Fences and walls, subject to Planning Board approval as part of a
 comprehensive plan for the entire tract.
 D. Conditional Uses
 1. Home occupations meeting the standards set forth in Section
 7030(3).
 E. Comprehensive Development, Density, Bulk, Yard, and Parking
 Regulations

 1. Min Tract Size: The entirety of the district, which
 shall be designed in a comprehensive
 manner.
 2. Number of Dwelling Units The maximum number of dwelling
 Permitted: units permitted in the district shall
 be 34 units in 17 two family side by
 side units.
 3. Bulk Standards for the R-1C
 District:
 a. Min. Lot Area per unit 7,000 sq. ft.
 b. Min Lot Frontage at street 10 ft.
 line
 c. Min. Distance Between Buildings, 25 ft.
 excluding open porches
 d. Min. Front Yard 15 ft.
 e. Min Rear Yard 10 ft.
 f. Min. Side Yard 0 ft. on one (1) side and 10 ft. on
 other side
 g. Max. Building Height of 2 1/2 stories, but not to exceed 35
 Dwelling [Amended 4/18/05 by ft. measured elevation of the finished
 Ord. No. from the average 03-05] grade five feet from the
 foundation to the highest point of
 the building.
 h. Max Building Coverage 45%
 i. Max. Lot Coverage 70%
 j. Max. Sq. Ft. per Dwelling 18 units not to exceed 3,000 square
 Unit feet of habitable space with a maximum
 of 500 square feet and a
 height limit of 1 story.
 16 units not to exceed 3,500 square
 feet of habitable space with a maximum
 of 500 square feet and a
 height limit of 1 story.

 k. Shared driveways are permitted.
*948
 l. Parking shall be permitted on one (1) side of the interior street to
 the development.
 m. Open porches may encroach into the front, side and rear yards, but
 by not more than fifty (50%) percent of the minimum applicable
 setback requirement.
 F. Design Standards for the R-1C District:
 1. The lots, road configuration, building placement, and unit types set forth
 on the Illustrative Figure for the R-IC district attached to this Ordinance
 are for illustrative purposes only and to demonstrate a plan
 complying with the intent and purposes of the R-IC district.
 2. All buildings lots shall be at least 150 feet from the Princeton Avenue
 Right-of-Way before any dedication.
 3. Public pedestrian and bicycle access to the abutting park shall be
 provided from within the development via the internal street. As part of
 the development, the existing sidewalk at Princeton and Crescent Avenues
 shall be extended to the pedestrian entrance of the abutting park.
 The sidewalk shall be along the northwesterly side of Princeton Avenue
 to the extent that Right-of-Way exists o~ is made available by the
 Borough of Rocky Hill to the developer.
 4. A village green shall be provided in the center of the development.
 5. A landscape buffer in accordance with Section 606 shall be provided
 along the perimeter property lines adjacent to the residential districts.
 6. The R-IC District shall be designed in a manner that:
 i. Clusters development close to the Village Center.
 ii. Is compatible with the street grid and block arrangement of the
 Village Center and Historic Preservation District.
 iii. Encourages the use of shared driveways and rear lanes to reduce
 the number of curb cuts and the visibility of driveways and
 garages.
 iv. Provides adequate green open space along Princeton Avenue as a
 viewshed corridor.
 v. Features a village green, which shall be designed and spatially
 defined by the architectural streetscape.
 vi. Provides pedestrian and/or bicycle connections to the Borough's
 sidewalk and open space network.
 7. The district architectural design standards contained in Section 704F (8)
 are intended to ensure that proposed buildings are compatible with the
 existing structures of the Historic Preservation District. Buildings to
 be constructed in the R-IC district shall have architectural elements such
 as open porches, building offsets, and changes in roof forms to be
 sensitive to massing and scale. The buildings shall incorporate a variety
 of porch configurations, changes in fenestration and/or other exterior
 elements and color variation for diversity in the streetscape.
 8. Within the development variations in architectural style are encouraged.
 Buildings and fences shall be designed to be compatible with the
 architecture and landscape within the Historic Preservation District. A
 development meeting the following standards and the standards set
 forth in Section 704F (6) and (7) shall be deemed to comply with the
 Historic Preservation District requirements set forth in Section 713:
 i. All massing, building and roof forms respect the general scale and
 proportions of the historic homes of the Borough of Rocky Hill.
 ii. Buildings shall be composed of a primary form or mass with
 secondary wings of similar character.
 iii. Garages and parking are, to the extent practicable, located in the
 rear of the lot and do not visually overpower the facade of the
 building.
 vi. Buildings that are located on street corners or have multiple
 facades along public areas have the f same architectural quality and
 detail on each of those facades.
 v. Materials, textures and colors are compatible with the homes in the
 historic district of the Borough of Rocky Hill.
 vi. Any change in building material occurs at a logical place, such as a
 change in building mass, roof or an inside corner.
 vii. All visible facades have a defined "base" (foundation wall, watertable,
 etc.) and "cap" (fascia/frieze, cornices, rakes, etc.)
 ix. Windows are vertically proportioned and appropriate for the style
 of the architecture.
 x. Shutters match the window opening and single shutters are not
 used on multiple or ganged windows.
 xi. Cornices utilize properly sized fascia and frieze boards and supporting
 moldings and shall be properly returned.
 xii. Columns are properly aligned with the shaft of the column to be in
 the same plane as the beam or frieze board above.
*949
 xiii. Landscaping plantings and fencing which are consistent with the
 existing pattern of the Village Center, compliment the architecture
 and do not obscure the buildings.
 xiv. Utility meters, air conditioner condensers, vents, trash, and recyclables
 are located away from the visible portions of the buildings
 and screened with fencing and/or landscaping.
 xv. Garages, breezeways and secondary wings are sited to create
 privacy yards and outdoor living spaces.
 xvi. Entrance and porch projections shall relate to the street and be
 visually compatible with related structures and spaces.
 G. Standards for Streets
 1. There shall be no more than one (1) access road from Princeton Avenue,
 and the access point therefor shall be located in a manner so as to
 minimize the disruption of the open space along the Princeton Avenue
 corridor, subject to a determination by the Professional Engineer and
 Traffic Engineer of the Planning Board that such point will provide safe
 ingress and egress for the development.
 2. The streets interior to the development will be constructed consistent
 with the Residential Site Improvement Standards and the applicable
 Borough of Rocky Hill Ordinances.
 3. All streets interior to the development will be owned, repaired and
 maintained by the developer of the Property or its successor or assigns
 or a homeowners association established for that purpose, with the
 documents forming the homeowners association approved by the Planning
 Board attorney.
 4. The type of homeowners association will be at the discretion of the
 developer, and, if necessary, the developer will provide the Planning
 Board attorney with proof of registration with the Department of
 Community Affairs
 5. No interior street in the development will be accepted by the Borough of
 Rocky Hill.
 H. Required Deed Restrictions
 1. Deed restrictions approved by the Planning Board attorney shall be
 recorded for that portion of the common open space within 150 feet of
 the Princeton Avenue Right-of-Way so as to ensure that it is maintained
 as an open field without formal landscaping or in farming operations,
 and that no buildings shall be constructed thereon. Other improvements,
 such as pedestrian and bicycle paths, fences, stormwater management
 facilities, sewer, water, and underground utilities, such as gas,
 electric, telephone and cable, may be located within this area. The area
 subject to deed restrictions shall be maintained in accordance with a
 plan approved as part of the development application.
 2. Deed restrictions approved by the Planning Board Attorney shall be
 recorded providing that the maximum number of dwelling units shall be
 34 age restricted units.
 I. Regulations for the Raising and Breeding of Horses Until such time as the
 R-1C district is developed in accordance with this Ordinance, the following
 shall apply whenever property in the R-1C district is used for the raising
 and breeding of horses:
 1. Minimum area: three (3) acres, including the lot plus land on adjoining
 lots dedicated by easement for such purposes.
 2. Number of horses permitted: no more than one (1) per acre.
 3. Setbacks: all structures and area for feeding and boarding of horses and
 all manure piles shall be set back at least 100 feet from all property
 lines.
 4. Fencing: lots upon which horses are raised and bred shall be suitably
 fenced, but electric fences are prohibited.

APPENDIX B

713 HISTORIC PRESERVATION  HP

A. Purpose
The purpose of this district is to regulate development within the Borough's historic district.

B. Criteria Governing Issuance of Preservation Permits
1. Generally. A preservation permit shall be granted only if the covered acts set forth in Section 419.1A, as *950 proposed or as modified by conditions imposed by the planning board:
(a) are compatible with the existing structures and landscape of the Historic Preservation District;
(b) would not adversely affect the ambiance, character, and appearance of the Historic Preservation District and the relationships among structures and between structures and public ways in the district;
(c) would not adversely affect the exterior architectural features and setting of the structure and its historical and architectural interest;
(d) are not out of scale with the other structural elements in the surrounding area; and
(e) consistent with the additional criteria of this sections and with the purposes of the Ordinance.
2. Additional Criteria For Proposed New Construction, Moving of Structure into or within the Historic Preservation District, Existing Structures Erected after 1929, and Outbuildings. A preservation permit to construct new structures or additions to existing structures, or to move structures into or within the Historic Preservation District, or involving covered acts to structures erected after 1929 and to outbuildings shall be granted only the work as proposed or as modified by conditions imposed by the planning board:
(a) is not incongruous with the existing structures and streetscapes of the Historic Preservation District; and
(b) is visually compatible with the structures and places to which it is visually related, as judged by the following standards:
(1) The height of the proposed structure shall be visually compatible with adjacent structures.
(2) The relationship of the width of the structure to the height of the front elevation shall be visually compatible with structures and places to which it is visually related.
(3) The relationship of the width of windows to the height of windows in a structure shall be visually compatible with the structures and places to which it is visually related.
(4) The relationship of solids to voids in the front facade of a structure shall be visually compatible with the structures and places to which it is visually related.
(5) The relationship of the structure to the open space between it and adjoining structures shall be visually compatible with the structures and places to which it is visually related.
(6) The relationship of entrance and porch projections to the street shall be visually compatible with the structures and places to which it is visually related.
(7) The relationship of materials and texture of the facade and roof of a structure shall be visually compatible with the predominant materials used in the structures to which it is visually related.
(8) The roof shape of a structure shall be visually compatible with structures to which it is visually related.
(9) If proposed, appurtenances such as walls and open-type fencing shall *951 form cohesive walls of enclosure along a street, to the extent necessary to maintain visually compatibility of the main structure with the structures and places to which it is visually related.
(10) The size of the structure, the mass of the structure in relation to open spaces, and the windows, door openings, porches and balconies shall be visually compatible with the structures and places to which it is visually related.
(11) A structure shall be visually compatible with structures and places to which it is visually related in its directional character, whether this be vertical character, horizontal character, or non-directional character.
It is not the intent of this Ordinance to discourage contemporary architectural expression or to encourage new construction which emulates existing buildings of historic architectural interest of a certain period or architectural style, but to preserve the integrity and authenticity of the Historic Preservation District and to insure the compatibility of new structures therein. If past architectural styles are to be used, a copy of a specific structure is preferable to an amalgam of building types, forms and styles.
(3) Additional Criteria for Structures Erected Before 1930 other than when their Demolition or Removal from the Historic Preservation District is Proposed. A preservation permit for covered acts on structures erected before 1930 other than when such covered act is the construction of an addition to a structure or the alteration of an outbuilding or the demolition or removal of such structures from the Historic Preservation District shall be granted only if the work as proposed or as modified by conditions imposed by the planning board:
a. preserves or enhances the historical or architectural value of and character of the structure; and
b. seeks to return the structure, or the part covered by the application, to the known or reasonably conceived appearance (including design elements, architectural details, and textures) it had when it was first constructed or when it was remodeled, if the remodeling occurred before 1930, except that modifications necessary or beneficial to contemporary living consistent with the architectural design and character of the structure or modifications which improve structures lacking architectural merit and not in character with the Historic District may be considered. In determining whether the applicant is proposing work which will restore the authenticity of the structure, as hereby required, the following principles, among other appropriate factors, shall when feasible be followed:
(1) Existing materials, if they are the original materials of the original structure or remodeling which is being restored, should be maintained and repaired rather than replaced.
(2) Architectural details of the original construction or remodeling which is being restored or altered should be retained. This includes, but is not limited to, cornices and their brackets, window trims such as molded lintels, porch elements such as posts, balustrades, and spindles, and windows, particularly the number and size of the individual panes.

*952 (3) If an element must be replaced rather than repaired, a copy of the original is preferable to a similar or conjectural piece.
(4) If a copy of a missing piece cannot be obtained, similar or conjectural items are preferable to none at all.
(5) The original roofing material should be maintained or repaired, and, if replacement is needed, it should be of the same material and size. If the same material is not available, a substitute material should be of the same shape, texture, and size.
(6) Storm windows and doors are not prohibited, but should be unobtrusive as possible.
(7) Period trim that defines the character of a building should be retained. It should not be covered by application of aluminum or vinyl.
(8) Synthetic siding (aluminum or vinyl) is acceptable, but the width of the siding shall be appropriate for the period of the building's construction.
(9) Windows should be divided into the number of lights appropriate to the style of the building. True divided lights are preferred, but snap-in mountings are acceptable.
(10) Shutters should be of a height and width so that they appear capable of being closed. They are not appropriate on double, bay, or picture windows.
(11) Doors should have the number and type of panels suitable to the style of the building.
4. Additional Criteria for Demolition or Removal from the Historic Preservation District of Structures building before 1930. A preservation permit for demolition or removal from the Historic Preservation District of structures built before 1930 shall be granted only if the condition of the structure is such that the cost of necessary restoration or repairs would preclude the owner from making any reasonable economic use of the property.
5. Additional Criteria for Site Plans, Subdivisions, and other Development Applications. Site Plans, subdivision, and other development applications which propose improvements shall respect the historic pattern of use of the historic property; respect the interrelationship of historic features of the property; and provide for an adequate visual buffer for the principal structure or structures and, where appropriate, for an adequate visual buffer for the other historic features of the site by use of open areas and appropriate plantings and, in implementation of these standards, create an historic protection area around the historic features on the property. The historic protection area shall include the principal structure and all of the other historic features on the property. The area shall also be of a size and configuration sufficient to maintain the historic setting and historic character of the property. All other dwelling units and other structures which the applicant proposes to build on the site may be clustered on the remainder of the tract outside the historic protection area and may be located on smaller lots than are otherwise permitted in the zone, provided that the lots may not be of such a size which the Planning Board deems inappropriately small given the configuration of the design of the subdivision and size of the unit to be constructed *953 thereon and further provided that the number of dwelling units, including the principal structure in the historic preservation area if such structure is a residential unit, is no greater than the number the applicant could achieve on the site were it to be developed on the basis of a conventional subdivision complying with all provisions of this Ordinance. Historic protection areas shown on the approved plans shall be included in one lot which does not include any proposed improvements on vacant land other than those accessory to the principal use or uses in the historical protection area. Such lot shall:
a. not be further subdivided so as to create additional building lots; and
b. be deeded restricted in a manner acceptable to the planning board attorney so as to prohibit further development on vacant land within such lot except for uses accessory to the principal uses within the lot. The planning board may require such additional deed restrictions as it deems desirable to protect the historic features of the property. All development applications within the district shall show all proposed improvements and shall be developed in accordance with a comprehensive plan.
6. Phasing of Stabilization Plans and Exterior Renovation of and Landscaping for Historic Structures. The planning board when approving a development application in this historic preservation zoning district may require that:
(1) any historic structure on the property be made secure against theft and vandalism;
(2) inflammable materials not be stored therein except in a manner approved by the fire marshall;
(3) interior features of historic significance such as moldings, fireplace mantels, doors, and fixtures not be removed except for preservation purposes and that any such features which are removed be put back in place;
(4) the interior not be damaged and any damage be repaired;
(5) emergency repairs sufficient to protect against deterioration of the structure be undertaken and proof of inspection for insect and vermin infestations and of appropriate remedial work be submitted;
(6) the structure be made structurally sound and its electrical, plumbing, and heating system be in adequate working order and free of hazards; and
(7) the exterior of the structure be restored in a manner consistent with the criteria set forth herein and landscaped with historic plantings as found and with other appropriate plantings.
The planning board may condition the filing of a subdivision plat upon the above obligations being met; may establish a phasing plan setting forth when any repair work shall be completed and the other obligations set forth herein are to be met; and may require that the repair and restoration work be subject to the approval of the Borough's zoning officer.
7. Work Under Pre-existing Permits. The provisions of this Ordinance shall not apply to any work performed pursuant to a valid and existing development approval or building permit issued prior to the effective date of the ordinance.

*954 714 AIRPORT HAZARD
All lands that lie within the boundaries of the an Airport Hazard Area shall comply not only with the regulations and standards set forth in this Ordinance and all other ordinances of this Borough but also with the minimum obstruction standards established in N.J.A.C. 16:62-4.1 and the minimum land use standards established in N.J.A.C. 6:62-5.1.

ARTICLE 8

AFFORDABLE HOUSING

800 PURPOSE
NOTES
[1] A copy of the ordinance is attached to this opinion as Appendix A.
[2] Another member, Raymond Whitlock abstained from speaking.
[3] A copy of section 713 is attached to this opinion as Appendix B.
[4] The Resolution incorrectly states "RC-1 zone."
[5] Rocky Hill Citizens for Responsible Growth is an unincorporated association consisting of the individual plaintiffs and other financial supporters.
[6] Finally, we note that as a practical matter, plaintiffs' attack on the application implicates many of the issues that would have been an integral part of the attack on the ordinance. Even so, we conclude that Judge Accurso correctly dismissed those counts of the complaint that sought to challenge the ordinance.